SAMUEL AND BENJAMIN F. ELDRIDGE, in equity,

*vs.*

DEXTER AND PISCATAQUIS RAILROAD COMPANY.

Penobscot.    Opinion June 21, 1895.

*Deed.    Cancellation.    Equity.*

If a party can read, it is not open to him, after executing a deed, to insist that the terms of it were different from what he supposed them to be when he signed it.

If equity will ever relieve one who has entered into a transaction under a misapprehension of its effect, when the other party merely failed to correct such misapprehension, there being no such peculiar relations between the parties as to place the one who remains silent under any unusual obligation, the principle is well settled that such party who remains silent must himself have appreciated the legal effect of the transaction and must have known that the other was acting in ignorance of such effect.

ON REPORT.

Bill in equity, heard on bill, answers and proofs, praying for cancellation of a deed granting a right of way to the defendant railroad in Dexter, Penobscot county, so that the plaintiffs might recover damages for their land so taken.

*J. and J. W. Crosby,* for plaintiffs.

*J. B. Peaks,* for defendant.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, JJ.

EMERY, J., did not sit.

WISWELL, J.    In February, 1889, the complainants conveyed to the defendant corporation a small strip of land, upon which the defendant's road-bed, for a short distance, has since been built.    The consideration named in the deed was one dollar; there was no actual consideration, the conveyance was voluntary.    The land conveyed was of trifling value, worth from ten to twenty-five dollars.

At the time of this conveyance, the complainants owned and still own other real estate, adjoining the land conveyed, upon

which there is a dwelling-house within a few feet of the railroad, and which they allege has been greatly injured by its proximity to the railroad, by reason of the noise, smoke and dirt resulting in the operation of the road ; and also because in the construction of the road-bed, it became necessary to build an embankment which has darkened and in other ways injured the house.

The complainants allege, in effect, that this deed was executed by them without knowing its contents, that it was neither read to nor by them, and that the description includes more land than they intended to convey ; that they were induced to make this conveyance by reason of false and fraudulent representations, although perhaps not intentionally false or fraudulent ; and, upon this they more especially rely, that the complainants were entirely ignorant that the conveyance would in any way affect their right to claim and recover compensation for the injury to their remaining property ; that the directors of the corporation, who procured a conveyance, were aware of the legal effect of the conveyance upon the complainant's right to recover for injuries to the remaining property, and were aware of the misapprehension of the complainants in this respect, but that they utterly failed to give them any information upon this subject and to correct their misapprehension. They therefore ask this court to cancel the deed and to declare it void.

No great reliance is placed upon the allegation that the deed was executed without being read. The deed was left with one of the complainants to procure the signature of the other. If it was not read by them, it was their own fault. They were not misled in any way as to its contents.

These complainants are men of intelligence ; they were willing to make a voluntary conveyance to the railroad company, of the small piece of land needed, because of the advantages that they expected to derive from the extension of the railroad from Dexter to Foxcroft ; they knew that they were making a conveyance, and would undoubtedly have been just as willing to give the lot actually described in the deed as the somewhat smaller one that they say they intended to convey.

But in any event, this is no ground for equitable relief, either affirmative or defensive.

"If a party can read, it is not open to him, after executing it, to insist that the terms of the deed were different from what he supposed them to be when he signed it. Nor could one who is unable to read, be admitted to object that he was misled in signing the deed, unless he had requested to hear it read, and this had not been done, or a false reading had been made to him or its contents falsely stated." *Metcalf* v. *Metcalf*, 85 Maine, 473.

The evidence utterly fails to show any such fraudulent representations or concealment of material facts, made by the committee of the directors who were engaged in settling land damages, either intentional or otherwise, as would warrant this court, upon any principle of equity, in granting the relief asked for.

This brings us to the next question, whether the ignorance of the complainants, of the effect of the transaction upon their claim for damages for injuries to their remaining property, will entitle them to the relief prayed for. There has been much conflict of authority as to when and under what circumstances ignorance of the law is a cause for equitable relief. But the general rules which have governed courts in granting equitable relief, because of a misapprehension of the legal effect of a transaction, are nowhere more clearly and satisfactorily stated than in Pomeroy's Equity Jurisprudence. We quote from section 843 : "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief. If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knew or had an opportunity to know the contents of an agreement or other instrument, cannot defeat its performance, or obtain its cancellation or reformation, because he mistook the legal meaning

and effect of the whole or any of its provisions. Where the parties with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies; equity will not allow a defense, or grant a reformation or rescission although one of the parties, and as many cases hold both of them, may have mistaken or misconceived its legal meaning, scope and effect."

In this case, the evidence does not disclose that there were any elements of fraud or other inequitable conduct upon the part of the persons representing the defendant corporation in the transaction. The testimony of the complainant, who met the directors and agreed to the conveyance, in regard to the interview is as follows: "The whole talk made to me, as I recollect it, was made by Mr. Geo. A. Abbott. He had a sketch in his hand with just two straight lines showing the little heater-piece that perhaps they would want to run across." He says: "If we buy Mrs. Horton's property we probably shouldn't touch your land at all. In case we don't buy that we probably should want to run across this little piece which he had the sketch of." He says: "We have been down talking with N. Dustin & Co. about their damages and they were not going to claim any. The remark that I made was that 'we don't want to be meaner than Dustin's folks are;' that is all the conversation that took place at that time that I remember. I assented to that and Mr. Straw went to writing the deed. Then I left the room. We were not to have any damages. Mr. Straw was present during all the time of this negotiation."

But it is further urged that if even there were no representations made by the directors, which induced the misapprehension upon the part of the complainants of the effect of the transaction, that their mere silence was inequitable and that it would be unconscionable to allow the defendant to profit by this conveyance.

If it is true that equity will relieve one who has entered into a transaction under a misapprehension of its effect, when the

other party merely failed to correct such a misapprehension, there being no such peculiar relations between the parties as to place the one who remains silent, under an unusual obligation, the principle is well settled, that such party must himself have appreciated the legal effect of the transaction, and must have known that the other was acting in ignorance of such effect. This does not appear in the case under consideration. The interview between the parties was extremely brief, and there is no evidence, from which it may be fairly inferred, that the directors knew that there was any ignorance or misapprehension upon the part of the complainants of the legal effect of the conveyance, or that the directors themselves gave this matter any consideration whatever.

The relief prayed for, therefore, cannot be granted and the bill must be dismissed. But the corporation has received some benefit from the conveyance, and we think that, under all the circumstances, it would be equitable that no · costs for the defendant should be allowed.

The decree will be,

*Bill dismissed, no costs.*