### LESLIE v. CITY OF GALVESTON. (No. 7924.)

(Court of Civil Appeals of Texas. Galveston. Dec. 3, 1920.)

1. Release ⟨⟩16—May be set aside for mistake of law induced by fraud, imposition, or undue influence.

A contract by which a city employé released the city for personal injuries is unenforceable, and may be set aside where entered into through mistake of law on the part of the ignorant employé, who relied on the representations of the city attorney, who erroneously stated that the city could not be held for such injuries.

2. Municipal corporations ⟨⟩733(4)—Charter provision exempting city from liability for injuries from improvements, held not to apply to outside water main.

Galveston City Charter, § 47, exempting the city from personal injury liability, is limited to injuries caused by or in the prosecution of public improvements within the city, and does not extend to an injury occurring outside the city to a servant assisting in constructing a water main authorized by section 34, paragraph R.

Error from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by H. W. Leslie against the City of Galveston. Suit dismissed, and plaintiff brings error. Reversed and remanded.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Frank S. Anderson, of Galveston, for plaintiff in error.

Turnley & Clark, of Houston, for defendant in error.

PLEASANTS, C. J. This is a suit by H. W. Leslie against the city of Galveston to recover damages for personal injuries received by him in the service of the defendant, and alleged to have been caused by the negligence of the defendant.

The petition alleges in substance that the plaintiff was employed by the defendant to assist in the construction of a water main owned by the defendant, and through which it pumped water from wells operated by it at Alta Loma in Galveston county, about 20 miles from the city of Galveston, for the use of the city and its inhabitants, to whom the city sold the water for profit; that while plaintiff and other employés of the defendant were engaged in the work of placing said water main along and across the county causeway over Galveston Bay, at a point about three miles from the limits of said city, he was injured by the weight of a section of said main, which he and one of his coemployés were handling under the orders and direction of defendant's foreman in charge of the work, being suddenly cast upon him, and that the physical strain and exertion thereby caused him resulted in a rupture of his left side, and as a result of such injury he has suffered great pain, and his strength and earning capacity have been greatly decreased, to his damage in the sum of $25,000. The grounds of negligence alleged were the failure of the defendant to furnish plaintiff a safe place to do the work in which he was engaged, and the act of defendant's foreman in charge of the work, and who had authority to employ and discharge plaintiff and his coemployés, in directing and ordering plaintiff to do the work in which he was engaged in an unsafe and dangerous place, and in not furnishing a sufficient number of men to safely perform the work plaintiff and his coemployés were directed to perform. The petition further alleged:

"That some time after his injury plaintiff, who is ignorant and unlearned in the law, applied to Mart H. Royston, the city attorney of the city of Galveston, and in whose legal knowledge and integrity plaintiff has the greatest confidence, for redress of his injuries, and, after making a full statement to said Royston of the circumstances under which he was injured, as hereinbefore alleged, and informing said Royston that he would rely upon his representations and advice as to plaintiff's legal rights, he was informed by Royston that under the law the defendant city was exempt from any liability to its employés for injuries received by them, and that the injury to plaintiff, under the facts and circumstances set forth, would not create any liability against defendant, by force of the law which exempts the city from liability for personal injuries sustained by any person. And at the same time said Royston told plaintiff that he would nevertheless see if he could not induce the city to make a voluntary contribution to plaintiff of sufficient amount to pay his doctor's bill and hospital fees, the same being $155, and at the same time said Royston stated to plaintiff that whatever sum the said city could pay would not be in payment of any claim, but would be in the nature of a voluntary contribution to plaintiff.

"That said Royston was a lawyer of long years of experience and learned in the law, and while plaintiff knew that he was acting for and in behalf of defendant in said transaction, he believed that he would at the same time correctly advise him as to his legal rights, and, so believing, the plaintiff accepted said statement and opinion of said attorney, and believed thereby that defendant was exempt from any liability to him of any nature whatsoever, and that whatever sum the city would pay to him would be in the nature of a voluntary contribution, and not in payment or settlement of his said claim, and by the representations of said attorney plaintiff abandoned his said claim, and considered it of no value whatever, and under said inducement and representations. That thereafter said attorney reported to plaintiff that defendant would give and contribute to him the sum of $155, the required sum for the payment of his said expenses, and that the same was a gift and voluntary contribution, all of which plaintiff fully believed, and, so believing, accepted the same as such.

"That at the time said attorney presented to plaintiff said instrument (releasing the defendant from all claims by plaintiff for damages caused by his said injuries), and requested him to sign the same, stating that it was a mere matter of form, so that the defendant would have some reason for said appropriation. That it was not necessary at all to sign a release, as there was nothing to release, but that said release would afford the defendant something as a basis for such contribution to plaintiff. Whereupon plaintiff, believing fully all said statements and representations of said attorney, executed the said instrument, believing at the same time, under the inducements aforesaid, that said release amounted to nothing, as there was 'nothing to be released, and that it would afford defendant some formal basis for making said appropriation. And by reason of the said statements and representations of said attorney, plaintiff having full confidence in the good faith of said attorney and his ability to advise him correctly, and not being familiar with the routine and methods of handling such matters by a municipal corporation, but believing that defendant, said attorney, and its officers and agents were all acting in good faith toward plaintiff and towards each other in said transaction, and believing that the execution of said instrument was an altogether unnecessary thing, he nevertheless signed the same.

"That said Royston well knew that plaintiff was ignorant and unlearned, and that he was relying altogether upon his judgment and opinion and advice, and would act upon the same, and the said Royston, knowing the importance of said release, and knowing that but for the same defendant would not pay said claim, and knowing that the defendant was not making a contribution to plaintiff, but was paying the said

claim at a grossly inadequate sum, solely in consideration of securing said release, concealed from plaintiff, in the way and manner aforesaid, the fact that said release was the sole consideration for said payment, and in all of which the defendant, its officers and agents, conspired and acquiesced, with full knowledge thereof.

"That the sole motive and object of said Royston in said transaction was to secure said release, and by the said representations and inducements so influenced plaintiff's mind that plaintiff was thrown off his guard, resting entirely with full confidence in the representations and statements of said Royston aforesaid. But for said representations and statements, which plaintiff says were not true, he would never have executed said release, but would have prosecuted his said claim, as he is now doing, for a substantial sum of money as compensation for his said injuries.

"That the defendant, its officers and agents, knew and were aware of the motive and purposes aforesaid of the said Royston, and of the representations aforesaid made by him to plaintiff, and that plaintiff was induced thereby to execute said instrument."

The prayer of the petition is for judgment setting aside said release and awarding plaintiff the damages claimed by him.

Defendant answered this petition by a general demurrer, special exceptions, general denial, and special pleas, the nature of which are not important on this appeal. The special exceptions were as follows:

"(1) That said petition shows upon its face that the plaintiff herein made, executed, and delivered to the city of Galveston, for a valuable consideration, a full and complete release for the injuries set forth in plaintiff's petition and for damages by reason thereof; and that said petition shows upon its face that the plaintiff had an equal opportunity with the defendant of being fully informed with reference to his rights, but that he has failed to make any investigation thereof.

"(2) That it appears from the allegations in plaintiff's petition that the defendant is a municipal corporation, and was the owner and operated and maintained a system of waterworks, as it was authorized and permitted to do by the charter received by the city of Galveston from the state of Texas, and that the charter of the city of Galveston is the public law enacted by the Legislature of the state of Texas on March 30, 1903, and that by paragraph R of section 34 of said charter said city was authorized 'to provide, construct, establish, maintain, operate and regulate in said city, a system of sewerage and of waterworks for fire and other purposes; to make, regulate and establish public wells, pumps, cisterns, hydrants and reservoirs in the streets or elsewhere within said city, or beyond the limits thereof for the extinguishment of fires and the convenience and health of the inhabitants thereof.' That in building, repairing, maintaining, and operating said waterworks system the said city of Galveston was prosecuting a public improvement, and that by the terms and conditions of said charter the Legislature of the state of Texas especially exempted the city of Galveston from any and all claims or liability for damages for injuries received by persons which said injuries were caused by or occurred in the course of the prosecution of any public improvement. Section 47 of said charter being as follows, to wit: 'That the city of Galveston shall not be liable in damages for any injury or injuries to persons or to property caused by filling, raising, grading, or elevating any property within the city of Galveston, or in the prosecution of any public improvement in said city, or on account of any defect of any street, sidewalk or other public place.' "

The demurrer and first special exception were sustained by the court, and, plaintiff declining to amend, his suit was dismissed.

We think the learned trial judge erred in this ruling. It is not contended by the defendant that the petition is bad on general demurrer if the grounds therein alleged for avoidance of the release executed by the plaintiff are sufficient.

[1] It is a well-settled rule of equity that a mistake of law on the part of one of the parties to a contract will defeat the enforcement of the contract when such mistake is induced by the fraud, imposition, undue influence, or the betrayal of confidence of the other party. We think if the law in regard to the liability of the city of Galveston for injuries to its employés was erroneously stated to plaintiff by the city attorney, the allegations of the petition bring plaintiff's case under this rule. The allegations of fraud and deception by the defendant, acting through its attorney, if true—and upon demurrer they must be taken as true—show such an abuse of plaintiff's confidence and such imposition upon his ignorance that it would be unfair and inequitable to enforce the contract.

The following statement of the law is found in 9 Cyc. p. 406:

"It is well settled that a contract will not be enforced in equity when a mistake of law of one of the parties is induced by fraud, imposition, undue influence, or an abuse of confidence springing out of the peculiar relations existing between the parties. In such cases the general rule that mistake of law is no ground for relief does not apply, for there is something more than this."

This proposition is supported by the following authorities: Hardigree v. Mitchum, 51 Ala. 151; Dill v. Shahan, 25 Ala. 694, 60 Am. Dec. 540; State v. Paup, 13 Ark. 129, 56 Am. Dec. 303; Titus v. Rochester German Ins. Co., 97 Ky. 567, 31 S. W. 127, 17 Ky. Law Rep. 385, 28 L. R. A. 478, 53 Am. St. Rep. 426; Eldridge v. Dexter, etc., Ry. Co., 88 Me. 191, 33 Atl. 974; Hickam v. Hickam, 46 Mo. App. 496; Benson v. Markoe, 37 Minn. 30, 33 N. W. 38, 5 Am. St. Rep. 816; Kleeman v. Peltzer, 17 Neb. 381, 22 N. W. 793; Clark v. Clark, 55 N. J. Eq. 814, 42 Atl. 98; Haviland v. Willets, 141 N. Y. 35, 35 N. E. 958, where the court said:

"It is equally well settled that where there is a mistake of law on one side, and either pos-

itive fraud on the other, or inequitable, unfair, and deceptive conduct, which tends to confirm the mistake and cancel the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other." Haviland v. Willets, 35 N. E. 958.

A number of authorities are cited in support of the last statement above quoted.

[2] We are also of opinion that the provision in the charter of the city of Galveston (Sp. Laws 1903, c. 37), under which it is claimed the city is not liable for injuries caused plaintiff regardless of whether such injuries were due to the negligence of the city, cannot be so construed. This provision of the charter is as follows:

"Sec. 47. That the said city of Galveston shall not be liable in damages for any injury or injuries to persons or to property caused by filling, raising, grading or elevating any property within the city of Galveston, or in the prosecution of any public improvement in said city, or on account of any defect of any street, sidewalk or other public place."

We think the clear meaning of this provision is to exempt the city from liability for injuries to persons or property caused by public improvements or in their construction within the city, and it cannot by any fair construction be extended so as to include exemption from liability for any injury wherever caused by the city's agents in the prosecution of enterprises or public work for the benefit of the city and its inhabitants. The provision, giving it its strict literal meaning, takes from persons injured by the negligence of the city the right to compensation if such injuries are caused by or in the prosecution of public improvements within the city. A statute of this kind should be strictly construed, and such restrictions upon the rights of the citizen should not be extended by implication or liberal construction.

These conclusions require that the judgment of the trial court be reversed, and the cause remanded; and it has been so ordered.

Reversed and remanded.