CLYDE O. LAMSON et al., Appellees, v. HORTON-HOLDEN HOTEL COMPANY et al., Appellants.

**CANCELLATION OF INSTRUMENTS:** Right of Action—Mistake as to Legal Construction of Contract. A contract entered into without any suggestion of fraud or invalidating circumstance, and couched solely in the plain, simple, and self-explanatory words *mutually* intended by the parties, may not be *canceled* by a court of equity on the ground that, subsequent to the execution of the contract, it was discovered that the parties were not in accord as to how the contract would be legally construed.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

DECEMBER 13, 1921.

REHEARING DENIED MARCH 11, 1922.

THIS action was begun at law, to recover rent upon lease of certain hotel property by plaintiffs to the defendants. Defendants appeared to the action, pleading several defenses to the plaintiffs' demand. After issues joined, and after considerable evidence had been taken thereon, the defendants filed a cross-petition in equity, asking that a certain written modification

of the original contract of lease be set aside and canceled, on the ground that the minds of the parties thereto never met upon the terms of such modification, and especially upon the amount of rental to be thereafter paid by the lessee. Upon the filing of the cross-petition, trial of the law issues was suspended, and the equitable issue was tried to the court. After hearing the evidence, the trial court found for the plaintiffs, and dismissed the defendants' demand for equitable relief. The defendants appeal.—*Affirmed.*

*F. E. Farwell* and *B. F. Swisher*, for appellants.

*Mears & Lovejoy*, for appellees.

WEAVER, J.—I. The original lease, dated April 28, 1913, provided for a leasehold term of 20 years. The rental was fixed at the rate of $1,833.34 per month for the first year; $2,166.67 per month for the second year; and $2,625 per month for the succeeding period of eight years,—the monthly installment in each instance being payable in advance. At the end of ten years, the rental for the remainder of the term was to be readjusted. In 1917, the lessees, complaining that the business was insufficient to justify the rent required of them, sought to obtain a modification of the lease. After prolonged negotiations, in which both parties had the aid of experienced counsel, a supplemental agreement was made, and reduced to writing. That part of this later agreement which purported to modify the terms of the lease is in the following words:

"That the written agreement made and executed in triplicate on the 28th day of April, 1913, under which first parties leased to second parties what is commonly known as the Russell-Lamson Hotel property in Waterloo, Iowa, is hereby modified in the following respect: That for the unexpired portion of the first period of said lease which expires September 1, 1924, the following shall be substituted: The rent as herein provided shall be substituted in lieu of the rental of said agreement for said period. In the event the second party does not operate the Ellis Hotel in Waterloo, Iowa, the rental which second party shall pay to first party shall be as follows: two thousand ($2,000.00) dollars per month, payable in advance on the first

day of each and every month, commencing April 1, 1917, and in addition thereto, one third of the receipts for guest rooms in excess of two hundred ($200.00) dollars per day.''

The Ellis Hotel was not thereafter operated by the lessees, and the provision of the agreement made contingent upon its operation is, therefore, not material.

From the date of that instrument until the beginning of this litigation, something more than two years later, the parties seem to have regarded the modification of the lease as being the expression of their agreement, and defendants continued to pay the rental at the modified or reduced rate of $2,000 per month, though no accounting appears to have been had of the hotel's receipts for guest rooms. In September, 1919, this action was begun at law by the lessors, to recover their alleged share of such receipts, to the amount of $13,730.18. The issue at first raised upon this claim involved a dispute as to the true construction of the contract provision by which plaintiffs were to receive, in addition to the monthly rental of $2,000, ''one third of the receipts for guest rooms in excess of $200 per day:'' it being the contention of plaintiffs that this stipulation entitled them to the prescribed share of such receipts for each and every day in which they exceeded the minimum of $200, without regard to the days on which such receipts were below that limit; while defendants insisted that their obligation to pay plaintiffs any part of the receipts from guest rooms had reference to the yearly income from that source in excess of an average of $200 per day. Referring to this phase of the controversy, the defendants at first, among other things, answered as follows:

''That, if the language of said contract should appear uncertain to the court, as between the construction claimed by the plaintiffs and the construction claimed by the defendants, as hereinbefore stated, the facts and circumstances and relations of the parties clearly show that said contract in respect to the receipts for rooms was on the basis of one third of the excess of an average of $200 per day taken in for rooms, and settlement to be made on such average for the year, and that, under said contract, these defendants are owing to the plaintiffs $3,994.26, which these defendants have been at all times and are now ready and willing to pay, subject to certain credits

which defendants claim to be entitled to, as set out in defend-
ants' counterclaim or offset hereto attached.''

Defendants also alleged that a mistake was made in draw-
ing the written contract, and prayed that it might be reformed,
to clearly show the intent of the parties to have been in accord-
ance with the construction contended for by them. The demand
for such relief was thereafter voluntarily withdrawn by defend-
ants, who then filed an amended answer and cross-petition in
equity, in which a cancellation of the supplemental contract is
asked, on the ground that the minds of the parties had never
met upon its terms, and in which it is further asked that their
rights and liabilities be determined and adjudicated on the basis
of the original lease.

That the nature and effect of defendants' pleading in this
respect may be fairly stated, we will quote at large therefrom.
After setting forth at length the circumstances under which the
original lease and supplemental contract were made, and the
controversy arising over its true meaning, the allegation pro-
ceeds as follows:

''That the defendants are now advised and believe and
charge the fact to be that the plaintiffs believed that their oral
conferences had resulted in an agreement whereby the defend-
ant corporation agreed to pay a rental of $2,000 per month,
payable in advance on the first day of each and every month,
commencing April 1, 1917, and in addition thereto one third of
the receipts for guest rooms in excess of $200 for each and
every day that the receipts were over $200 per day. In other
words, that the plaintiffs should have the advantage and be
entitled to one third of the said excess receipts for every day
that the receipts were over $200 per day, and that the excess
could not be used for averaging the receipts, and the plaintiffs
only entitled to one third of the excess over the annual average
of $200 per day. That, on the other hand, the defendants be-
lieved that the negotiations had resulted in an agreement re-
ducing the rent for the balance of the first 10-year period to
$24,000 a year, plus one third of the receipts for guest rooms
in excess of the annual average of $200 per day, which $24,000
of rental should be payable at the rate of $2,000 per month, in
advance; and that the amount due from guest rooms should

be payable annually after said amount had been ascertained through audit; and that the plaintiffs executed the written modification, believing that the said writing incorporated therein their understanding of the aforesaid oral negotiations or supposed agreement; and that the defendants upon their part executed the said written modification of the lease with the firm belief that it embodied therein their understanding as to the amount of rental, the terms of its payment, and the method of computation, as hereinbefore alleged. And defendants allege that, in truth and in fact, the said modification did not, by its terms, express the intention and meaning of either of the parties, plaintiffs or defendants, and was executed by the respective parties under mistake as to its contents and the true construction thereof; and said defendants allege that, by reason of the mistake of both parties, no oral agreement had in fact been reached, for the reason that the minds of the parties had failed to meet upon the amount of the rent, its method of computation, and terms of payment thereof, and that the written agreement was different with respect to said matters from what was intended by either party, and that the minds of the plaintiffs and defendants never met upon any oral proposition or agreement or upon the contents of the writing which they actually executed through mistake as aforesaid, and that, because of the matters and things herein alleged, the aforesaid modification of the lease is null and void, and should be canceled, and the parties restored to their original respective positions and obligations under the original lease.''

Plaintiffs having taken issue upon this pleading, the cause, so far as it relates to defendants' equitable demand for cancellation of the supplemental contract, was tried to the court. The evidence offered related principally to the conversations and negotiations between the parties and between their counsel, preceding and leading up to the execution of the supplemental contract. As the prayer for a reformation of the contract was withdrawn, this testimony has little, if any, bearing on the question finally submitted, except as it may tend to develop the fact that the parties did not place the same interpretation upon the clause of the writing relating to the hotel receipts from guest rooms. Appellants lay special stress, in argument,

upon the statements of the plaintiffs and defendants on the witness stand, each saying, in substance, that he signed the supplemental agreement believing that the meaning and 'effect of the provision as to receipts from guest rooms were in accord with the construction he now contends for, and that, if he had not so believed and understood, he would not have executed the instrument. It should also be said, in this connection, that plaintiffs, after testifying to their understanding of the contract, further expressed a willingness to stand by the agreement as written, according to the determination of the court upon its proper construction. We think it unnecessary to go further into the details of evidence.

In the record as it now stands, no reformation of the contract is sought. No fraud or misrepresentation is charged or proven on either side. The language in which the agreement is expressed appears to have been deliberately chosen, with the aid of counsel on both sides. No word intended to be used is shown to have been omitted, nor any word mistakenly employed where another word was intended. There is no pretense that, when prepared for execution, it was misread, or was signed by either party thereto in ignorance of its precise terms in any respect. Both parties acquiesced therein, as a settlement and adjustment of the matter of modifying the original lease, and proceeded thenceforth for more than two years to recognize its validity. The defendants paid and plaintiffs accepted the monthly installments of rent on the basis of the new agreement. The parties on either side are persons of intelligence, and evidently experienced in business affairs of more than ordinary magnitude. The sole ground now assigned for repudiating the written agreement so consummated, and for seeking its cancellation by decree of court, is that the provision therein by which, in addition to the payment of rent at the rate of $2,000 per month, lessees promised and undertook to pay the lessors "one third of the receipts for guest rooms in excess of $200 per day," was not understood by both parties in the same sense. It is argued for the appellants, and very truly, that, in the absence of a meeting or agreement of the minds of the parties upon all the essential elements of a contract, there is no contract which the law will recognize or enforce, or equity reform; and it is confidently

asserted that the record in the case before us shows affirmatively a failure of the lessors and lessees to reach a common understanding or mutual agreement upon the division or sharing of the excess of hotel receipts from guest rooms. This, it is said, renders the so-called modification of the original contract of lease entirely nugatory and void.

Of the general rule that there can be no contract without a meeting of the minds of the parties, there can be no doubt; but it does not follow that such mutual assent or concurrence of minds may not be so clearly and conclusively expressed as to remove it from the category of disputable propositions. To hold that a contract freely entered into, without fraud, misrepresentation, or unconscionable advantage, reduced to writing by the parties themselves, or by their chosen counsel, framed in intelligible form, in familiar, nontechnical words, of common usage, and for years allowed to stand unchallenged, as the evidence of their agreement; may be adjudicated null and void, upon the plea that the minds of the parties never met in accord upon the construction to be placed upon one item thereof, would be to destroy the sacredness of all contracts. There must be a time and place or limit beyond which parties to an agreement will be conclusively estopped to deny its contractual character for no better reason than that their minds never met upon the construction to be placed on their own deliberately chosen words. True, as we have said, there must be mutual assent to the terms and conditions of a valid agreement; but how is that assent to be shown or established? Adopting the language of Mr. Bishop, found in Chapter 12 of his work on Contracts, page 126, the concurrence of the minds of the parties may be evidenced "by mutual written or spoken words; by offer accepted in terms; or by offer acted upon. If the thing to be done is set down in writing, the parties, by signing and delivering it, mutually consent to the same thing at the same instant."

Assuming that such agreement is made upon a valid and sufficient consideration, and involves no violation of law or public policy, it is then enforcible at the suit of either party thereto, subject only to the right of either to demand reformation or rescission, upon sufficient showing of fraud or mistake. If there be neither fraud nor mistake justifying equitable inter-

ference, the terms of the contract as written must prevail. If there be controversy over the meaning or effect of the writing, the court will construe it; and by that construction the parties must abide. Stated otherwise, having reduced their agreement to writing, in plain, unequivocal terms, or in terms susceptible of interpretation and construction under recognized rules of law, they are conclusively held to have mutually consented to be bound thereby. Neither can avoid this result by saying, "I did not so understand the meaning of the writing, and am, therefore, under no obligation to perform;" or by saying, "I did not understand the legal effect of this stipulation;" or by saying, "This construction is in strict accord with my understanding at the time I signed the paper, but it now appearing that the other party did *not* so understand it, there is, therefore, no contract." This would seem to be too elementary to require extensive citation or discussion of the authorities. In Section 843 of Volume 2 of his work on Equity Jurisprudence, Mr. Pomeroy says:

"The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief. If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knew, or had an opportunity to know, the contents of an agreement or other instrument cannot defeat its performance or obtain its cancellation or reformation because he mistook the legal meaning and effect of the whole or of any of its provisions. Where the parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies. Equity will not allow a defense, or grant a reformation or rescission, although one of the parties—and as many cases hold, both of them—may have mistaken or misconceived its legal meaning, scope, and effect."

See, to the same effect, Story on Equity (13th Ed.), Section 116. This court has repeatedly affirmed and applied the

same principle. *Corning v. Grohe,* 65 Iowa 328, 332; *Gerald v. Elley,* 45 Iowa 322; *Glenn v. Statler,* 42 Iowa 107; *Moorman v. Collier,* 32 Iowa 138. See, also, *Eldridge v. Dexter & P. R. Co.,* 88 Me. 191 (33 Atl. 974); *Metcalf v. Metcalf,* 85 Me. 473; *White v. Smith,* 37 Mich. 291; *Holmes v. Hall,* 8 Mich. 66; *Watrous v. McKee,* 54 Tex. 55; *Williams v. Rhodes,* 81 Ill. 571, 587.

Nor will a mutual mistake as to the construction of a contract entitle either party to equitable relief. *Midland G. W. R. Co. v. Johnson,* 6 H. L. Cases 798. The misconstruction of a contract as written is a mistake of law, and not of fact. *Sibert v. McAvoy,* 15 Ill. 106; *Cochran v. Pew,* 159 Pa. 184 (28 Atl. 219). In the *Sibert* case, supra, there was a dispute over the construction to be put upon a contract. Plaintiff, having first unsuccessfully sought to recover at law, undertook to correct an alleged mistake in equity. In denying relief, the court says:

"If he misconstrued the contract as written, that was a mistake of law, and not of fact, and for such mistakes equity can grant no relief. It is where parties intended to insert words in a contract which were by accident omitted, that equity can reform the contract by inserting them, or by expunging words they did not intend to have inserted. If the words are written as the parties intended they should be written, or supposed they were written when they signed the contract, no matter how much they may be mistaken as to the meaning of those words, no relief can be granted at law or in equity. The construction of words is a matter of law. The insertion of words is a matter of fact."

We are cited by appellants to no precedent going to the extent of the doctrine which they ask us to affirm. Most of the cases from which quotations are made by counsel are those in which reformation or rescission of contracts has been demanded because of alleged fraud or accident or mistake. This case presents no such features, except as we may say that an alleged failure of the minds of the parties to meet upon the terms of the contract is the result of a mistake. Appellants specifically disclaim any demand for reformation of the contract. They charge no fraud. There is no manner of doubt or confusion as to the subject-matter of the negotiations leading up to the sup-

plemental agreement; and, as we have before remarked, there is in the writing no omission of any word or words intended to be inserted, or one inserted by mistake or inadvertence. Indeed, it has been and is their contention that the contract relating to the excess earnings from guest rooms is precisely what they intended it to be, a stipulation to account to plaintiffs for one third of the average daily excess of such income for each yearly period. They plant their defense and their claim to a rescission on the one and only ground that, while such was and is their own construction of the writing, the plaintiffs did not so understand it, but executed it in the belief that they were to receive the one third of the excess of such income over $200 per day for each day on which an excess was realized, without any diminution on account of days on which the earnings did not reach the minimum. They ask no reformation, because, on their theory, there was no meeting of minds, and therefore no contract on which the court may exercise its equitable power of reformation. The writing, it is insisted, is thus reduced to a mere form of words, without legal force or effect, and should be canceled.

Whether, under any circumstances, a party who is being sued upon his written contract can escape the obligation to perform it according as the court may construe its terms, by putting his adversary upon the witness stand and drawing from him an admission that, when he executed the paper, he entertained a different understanding or belief concerning its legal effect, we shall not attempt to discuss or decide. It is enough at this time to say that, if such a thing be ever legally possible, we are well satisfied that this case is not subject to an application of that rule. There is shown in this case no failure of the minds of the parties to meet upon any one essential to a valid contract. There is not, nor has there been, any question as to the subject-matter of the agreement, the modification of the lease theretofore existing. It is conceded that a modification was agreed upon by which, for a stated period, defendants were to pay rent at the rate of $2,000 per month, "and in addition thereto one third of the receipts for guest rooms in excess of $200 per day." No question is raised as to the sufficiency or legality of the consideration for such agreement. The parties

(so far as shown) are all of adult years, sane, and capable of contracting. There is no evidence from which it can be said that, in coming to the agreement and reducing it to writing, either party did more or less than was intended. If this does not, to all legal intents and purposes, disclose a valid and binding contract, it would be difficult indeed to frame one. Its effect as such cannot be neutralized by a showing that the parties do not agree upon the legal construction of the words chosen by common consent to express their understanding. Such disagreement does not evidence a want of the concurrence of minds necessary to the making of a contract.

The trial court did not err in holding that defendants had failed to make a case for cancellation of the supplemental contract sued upon.

II. Considerable attention is given in argument by counsel on either side to the plaintiffs' pleas of estoppel, as against defendants' demand for equitable relief. The questions so raised would call for serious consideration, were it necessary to the disposition of the appeal; but finding, as we do, against the defendants upon the merits of the case presented, we shall pass those issues without discussion.

The decree of the district court is affirmed, and cause remanded for trial and judgment upon the issues at law.— *Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.