HARVEY CONSTRUCTION COMPANY, original plaintiff, ELDON E. FREUND et al., appellants, v. ROBERT E. PARMELE, doing business as AGONAIR SERVICE, appellee.

No. 50472.

732

MARCH 6, 1962.

Hoersch, Werner & Harbeck and Hall & McCarthy, all of Davenport, for appellants.

Betty, Neuman, Heninger, Van Der Kamp & McMahon, of Davenport, for appellee.

THOMPSON, J.—At all times material Eldon E. Freund and Richard J. Freund, who will be hereinafter referred to as the plaintiffs, have been the holders of the legal title to certain lands in Scott County comprising a tract of 174 acres. On March 26, 1947, they entered into a written agreement with the defendant, Robert E. Parmele, by the terms of which they leased to him a described part of said lands totaling 27.51 acres for airport purposes. Parmele entered into possession and has constructed an airport, with runways, hangar and perhaps other appurtenant structures and improvements. In 1959 the plaintiffs entered into an option agreement with Harvey Construction Company for the sale by them to Harvey of all the lands owned by them, excepting two homestead properties located thereon. Harvey Construction Company also appears as a plaintiff in this action. In 1956 the entire tract was annexed to the City of Bettendorf and now lies within the city limits. This includes the part leased to the defendant. On August 18, 1959, the City of Bettendorf enacted a zoning ordinance which placed all of this property in a "B" Single Family Residential district. The defendant's use of the part occupied by him is a nonconforming use.

The controversy here does not involve the actual leasing provisions of the contract of 1947, but revolves around a certain option clause. The lease provides, in addition to a stipulated yearly rental, that it expired on December 31, 1956; but also that, upon lessee giving a prescribed notice, it might be extended for successive ten-year periods through December 31, 1996. The validity of these provisions is not in dispute. However, a part of Paragraph 1 of the lease is an option agreement for the taking of further lands of the plaintiffs by the lessee, in these terms:

"Lessors agree to lease to the Lessee any additional real property belonging to the Lessors adjacent and contiguous to the real property herein leased upon the same terms and condi-

tions as herein stated and for the consideration as set forth in Paragraph 2 of this Indenture, as the Lessee shall demand from time to time throughout the term of this Lease or any successive term. Lessee shall make such demand upon the Lessors on or before December 31, of any year for the additional real property desired by the Lessee and possession shall be given to the premises on January 1, succeeding the giving of notice by the Lessee for such additional real property, and the obligation for the payment of rent for such additional property shall commence on January 1, when possession is given by the Lessors."

It is this part of the contract which occasions the litigation now before us.

It is plaintiffs' contention in their declaratory-judgment action that this clause is so vague, indefinite and uncertain as to be a nullity. As we understand plaintiffs' position, it is that there is no clear and unambiguous meaning that can be given to the words "adjacent and contiguous" so that it can be determined what part of the tract not covered by express terms in the lease is subject to being taken by the lessee upon demand; and that there is no definite or certain rental provided. The trial court found that a certain part of the plaintiffs' remaining lands lying south of a highway known as "Middle Road" and containing about 20 acres was not within the meaning of the words "adjacent and contiguous" and so not subject to being leased on demand by the defendant. It also held that two homesteads, consisting of houses with appurtenant buildings, occupied by the plaintiffs and lying north of the roadway, were not within the meaning of the option clause; but that all of the remaining lands of the plaintiffs north of the roadway were "adjacent and contiguous" to that part specifically leased and so subject to being taken by the defendant upon demand as stated in the clause above quoted, at any time until December 31, 1996, if the lease should be renewed for successive ten-year periods to that date. The trial court also held that plaintiffs might sell and convey all of their lands, but subject to the rights of the defendant as above stated. The defendant has not appealed from those parts of the decree adverse to him.

The case was tried on a stipulation of facts, from which we learn that prior to January 1, 1948, the defendant demanded and

received an additional tract of 2.29 acres, and prior to January 1, 1949, another parcel of 2.30 acres. Prior to January 1, 1950, he released a part of the additional land. Prior to January 1, 1954, he demanded and received an additional .77 of an acre; and prior to January 1, 1957, an additional 5.54 acres; so that at the time of the trial he was occupying a total of 33.82 acres. He has paid the stipulated rent of $1500 for the original tract specifically leased, this figuring out at the rate of $54.53 per acre. For the added acres he has paid at the rate of $50 per acre, which has been accepted by the plaintiffs without objection. The trial court's decree requires him to pay $54.53 per acre for any additional lands taken.

The stipulation also shows that prior to the execution of the lease plaintiff Eldon E. Freund had a structure, whether a home or not does not appear, located on a portion of the tract not specifically leased to defendant, but lying north of Middle Road, which he replaced in 1949 with a homestead, including a house, garage and other outbuildings; and that in 1950 Richard J. Freund replaced and added to a set of buildings, also located north of Middle Road but not specifically leased, with a house, garage and other outbuildings. No objection was made by the defendant to these buildings, and they have at all times since been occupied by the Freunds as their homesteads.

I. We find no merit in the contention of the plaintiffs that the rental stipulated to be paid for additional lands demanded and taken by the defendant is so vague and uncertain as to be incapable of ascertainment and so the contract must be condemned for indefiniteness. It requires only mathematical computation to learn that the rental per year per acre for the specifically described tract of 27.51 acres at a total of $1500 per year is $54.53. The option clause which forms the basis for dispute says that additional property taken shall be "upon the same terms and conditions as herein stated;" and the terms are stated in the lease as $1500 per year for the described 27.51 acres. It has been held that an agreement for an extension of a lease is sufficiently definite even though the rental is to be agreed upon. I Corbin, Contracts, section 266, page 890; Mutual Paper Co. v. Hoague-Sprague Corporation, 297 Mass. 294, 8 N.E.2d 802, 806, 807; Hall v. Weatherford, 32 Ariz. 370, 259 P. 282, 285, 56

A. L. R. 903; Young v. Nelson, 121 Wash. 285, 209 P. 515, 516, 517, 30 A. L. R. 568. We find no difficulty here in determining with reasonable certainty the amount of rental to be paid in case of an extension of the lease. It must be according to the terms of the original lease. This was for $1500 for 27.51 acres, or, as the trial court found, at $54.53 per acre.

II. The more difficult proposition concerns the certainty of what lands of the lessors were included in the term "adjacent and contiguous". As the defendant in his written argument properly says: "If there could be any uncertainty then it is as to the meaning of 'any additional real property belonging to the Lessors adjacent and contiguous' to the real property described in paragraph 1 of the lease." The defendant does not agree, of course, that there is any real uncertainty or ambiguity at this point. He cites numerous authorities as to the meaning of the term "adjacent and contiguous". There are many of these; and the terms are not, generally speaking, in dispute. However, we are cited to no authority, nor have we found any, which holds that in all circumstances a large tract of realty, which borders on a smaller parcel, is entirely "adjacent and contiguous." The lands of the plaintiffs at the time of the lease, and to date, consisted of the Southeast Quarter of the Northwest Quarter; the Northeast Quarter of the Northwest Quarter; the Northwest Quarter of the Northeast Quarter; a part of the Southwest Quarter; and a part of the Southwest Quarter of the Northeast Quarter; all in Section 21, Township 78 North, Range 4 East of the 5th P.M. These made up a compact total of 174 acres, apparently used as farm lands at the time of the lease. The 27.51 acres of the original lease border and are contiguous to the remaining land along the easterly side of the leased part. Some 20 acres of the total, not including any part of the original lease, lie south of Middle Road. Two sets of buildings were included in the plaintiffs' lands at the time of the lease, and these have now been replaced by new structures, occupied by the plaintiffs as their homesteads. These lie north of the roadway. It may also be inferred that all of the plaintiffs' land at the time of the lease lay close to a developing urban center in Scott County; it has now, and including the original leased tract, been annexed by the City of Bettendorf, which has zoned it as a residential district.

738

■ ■ The problem, then, is whether the intention of the parties at the time of the making of the lease in 1947, and as expressed in the lease, was to give the defendant the right to demand all of the remaining land owned by the plaintiffs at any time during the next fifty years, or only such as might be reasonably necessary for his use in the operation and development of his airport. Our search must be for the intention of the parties at the time of execution of the lease; and this must be limited to what they said in the lease itself, if it is clear and definite. It will not avail the plaintiffs to say that they understood the lease, and the option agreement contained therein, in a different sense from what its terms plainly imply. Lamson v. Horton-Holden Hotel Co., 193 Iowa 355, 362, 185 N.W. 472, 475, 26 A. L. R. 465. So, if a proper construction of the option agreement, which is the only part of the lease in controversy, leads to the conclusion that the parties clearly and definitely agreed that all of plaintiffs' remaining land, consisting then of about 146.6 acres, was subject to demand of the lessee, we must hold the trial court properly ruled the case. But for reasons hereinafter set out, we do not agree that this is a proper interpretation.

The trial court, apparently realizing the injustice of permitting the defendant, under the construction of the option for which he contends, to take the plaintiffs' homesteads, held them not intended to be included. But if we are to say that all the remaining lands of the plaintiffs are to be construed as coming within the meaning of the term "adjacent and contiguous", there seems no reason to exclude the homesteads. They are then as much a part of the contract as any other lands. We are aware that this may have been an act of grace on the part of the trial court, and since the defendant has not complained it must stand as a verity. We refer to it only to show that the trial court itself felt some doubt as to the proper construction to be put upon the option clause. As to the 20 acres lying south of the road, there is more reason for excluding it, although many definitions of the words "adjacent and contiguous" hold that even the presence of an interposed road does not prevent lands lying on the other side from being included in the meaning of the term.

 We think the true rule is that the situation of the parties, the objects they were trying to accomplish, and any other facts in evidence must be considered in determining the extent to which a part or all of a large tract which borders on a smaller one is to be considered as adjacent and contiguous.

 We are aware that the long arm of the law cannot in all cases reach far enough to protect the unfortunate, the unwise, the improvident, the shortsighted or the unwary from the results of definite legal contracts into which they have entered to their detriment. A person of legal age and mental competency is as free to make bad bargains as good ones without interference from the courts. However, when there is fair doubt as to what the bargain really was, what the parties actually had in mind as the language of the contract expresses it, the law has laid down certain rules which we think apply to the present situation.

It will be noted that the option as contended for by the defendant gives him the right at any time during a period of fifty years to demand one acre, or ten acres, or any part or all of the plaintiffs' property at the rental of $54.53 per acre per year. He is under no obligation to take any of it; and during a period of 13 years from the time of the lease to the date of trial he has demanded only an additional 6.31 acres. But during all this time, and if the option agreement means what the defendant contends and the trial court found, the plaintiffs' lands are encumbered by it. It is cold comfort for them to be told by the trial court that they are free to sell, subject to the terms of the option. No one will buy with an idea of improving the property, because the defendant might at any time decide to exercise his option and take over the lands with any improvements. Plaintiffs are left, for practical purposes, with some 120 acres of land, now included in the city limits of Bettendorf, for which they have no use except possibly as a farm. If this is what the parties intended, as expressed by what they said in the option clause, of course plaintiffs have no remedy. They must await from year to year until the end of 1996 to see whether the defendant will, by the end of December, of each year, demand some additional part. It is no doubt true that the defendant wished to insure himself additional room to expand his airport; but there is no indication to date that he will need all of

the plaintiffs' property; nor do we think the parties had such a need in mind when they made their contract. At least we think the situation is such as to call for a construction by the courts as to the real intent expressed in the option.

■ III. The decisive question is whether the parties so clearly expressed their intention that all of the plaintiffs' remaining property, not specifically covered by the original leasing clause, was subject to the option given the defendant that we must say there is no room for construction; or, to put it in another way, that only that construction is possible. The option clause makes "any additional real property belonging to the Lessors *adjacent and contiguous* to the real property herein leased" subject to the lessee's demand. (Italics supplied.) The words "adjacent and contiguous" are the important ones. The property covered must be not only "adjacent" but "contiguous"; and likewise, it must be "adjacent" as well as "contiguous". Both elements must exist. Each word in a statute, or contract, must, if possible, be given some meaning. It must be considered that the words were used advisedly, and for a definite purpose in expressing the intent of the parties. The identical words "contiguous and adjacent" were so interpreted in People ex rel. Smail v. Board of Education, 343 Ill. App. 362, 99 N.E.2d 385, 389, 390. "Contiguous", according to Webster's Third New International Dictionary, Unabridged, means "to touch on all sides; touching along boundaries, often for considerable distances; next or adjoining with nothing similar intervening; nearby, close; not distant; touching or connected throughout." Generally, but not always, there is an implication of touching borders. Here, two of the four quarters of quarter sections owned by the plaintiffs bordered on—touched—the part leased by specific description; two did not. The latter are some distance away, although the entire tract is compact and the two which do not touch do in fact border those which do.

But plaintiffs' remaining lands, to be covered by the option clause, must also be "adjacent." This word has various meanings, depending on the context and the apparent object to be gained by its use. We have said: "The word 'adjacent' is, at least, somewhat indefinite. Ordinarily, it means 'to lie near, close, or contiguous'. * * * Even in its strictest sense it means

no more than lying near, close, or contiguous, but not actually touching." Dunker v. City of Des Moines, 156 Iowa 292, 294, 295, 136 N.W. 536, 537. "[Its] purpose * * * is to be known from the context." Wormley v. Board of Supervisors, 108 Iowa 232, 234, 78 N.W. 824, 825. See also Johnston v. Davenport Brick & Tile Co., D. C., Iowa, 237 F. 668, 669, 670; Hanifen v. Armitage, C. C. A., 3 Cir., 117 F. 845, 851; Harless v. Forgy, Hanson & McCorkle, La. App., 149 So. 135, 136; Bowes v. City of Chicago, 3 Ill.2d 175, 120 N.E.2d 15, 29, 30.

 The meaning of all the authorities last above quoted is that "adjacent" under all circumstances means at least "near"; and its exact application in a statute or a contract must be determined from the context by determining what end the law-making body or the parties to the agreement were attempting to serve. As applied to the case before us, we conclude the intent of the parties to make all of plaintiffs' property subject to the option right of the defendant does not so clearly appear that we can say the contract is free from indefiniteness and ambiguity. It must be interpreted.

IV. Once having reached the necessity for construction of the uncertain words "adjacent and contiguous", we turn to certain rules applicable to like situations which have been adopted by the courts. Of these there are several, all related, having the same object and pointing to the same conclusion.

 In 17 C. J. S., Contracts, section 294, page 687, it is said: "Provisions in a contract in limitation of a party's legal rights are strictly construed, and, where contracts are optional with respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound." Also we find: "* * * the settled rule of construction [is] that an option is to be construed liberally in favor of the party granting it and strictly against the holder thereof." Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 733, 119 P. 260, 266, 43 L. R. A., N. S., 487, 496.

Similar rules, all to the effect that the courts will not place an unjust interpretation upon a contract unless its terms compel them to do so, have been universally followed. 12 Am. Jur., Contracts, section 250, page 792. An agreement will not be

construed so as to give one party an unfair, oppressive or inequitable advantage over the other. 12 Am. Jur., Contracts, section 250, pages 792, 793. It is well settled that unless the terms of the contract clearly require it, an interpretation will not be given it which places one party at the mercy of the other. Little Cahaba Coal Co. v. Aetna Life Insurance Co., 192 Ala. 42, 68 So. 317, 319, Ann. Cas. 1917D 863; Sanford v. Brown Bros. Co., 208 N. Y. 90, 101 N.E. 797, 799, 50 L. R. A., N. S., 778; Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681, 27 A. L. R. 834, 839; Chicago, Burlington & Quincy R. Co. v. Provolt, 42 Colo. 103, 93 P. 1126, 16 L. R. A., N. S., 587, 592.

We ourselves have said: "Again, it is well settled that, in the construction of doubtful contracts, courts will endeavor to give them that interpretation most equitable to the parties, one which will not give one of them an unfair or unreasonable advantage of the other." White v. Miller, 132 Iowa 144, 149, 109 N.W. 465, 467, 8 L. R. A., N. S., 727. And we have also said: "Unfair or unreasonable results will if possible be avoided." Darnall v. Day, 240 Iowa 665, 670, 37 N.W.2d 277, 280. See also Johnston v. Johnston, 182 Iowa 481, 485, 166 N.W. 65, 66.

The application of these principles to the case at hand needs no elaboration. When we have once reached the conclusion that the contract between the parties here was uncertain as to its meaning, particularly as to what lands of the plaintiffs are "adjacent" to those originally leased, there is no escape from the holding that an interpretation as contended for by the defendant would leave the plaintiffs at his mercy. They cannot sell their lands except under the blight of defendant's right to claim any part of them at any time until 1997; they dare not spend money in improving them because no matter how valuable they might become with such improvements, the defendant could claim them at the stipulated rental per acre. The construction put upon the contract by the defendant makes it one such as reasonable men would not be likely to undertake. 12 Am. Jur., Contracts, section 250, page 792.

V. However, the fact that we find the contract one which is doubtful in meaning does not mean we must hold it

entirely void, as the plaintiffs contend. We think it must be given a reasonable meaning, one which from its terms and the surrounding circumstances it appears was the real intention of the parties. The defendant at the time of the making of the lease, in 1947, was contemplating the building of an airport; and he has carried out this intention. He apparently wished to assure himself of additional ground to extend his business by the building of other structures, runways, and other proper requirements of the airport operation. So, while we cannot construe the option clause as giving the defendant an unlimited right to claim any of plaintiffs' property, near or far, we must conclude that the parties did intend to give him something; that is, a right to lease such parts of the remaining lands, nearest to the original tract, as he might reasonably need for development of his facilities. Three authorities point up the proper rule and procedure at this point. In Mutual Paper Co. v. Hoague-Sprague Corporation, supra, the rent to be paid if the lessee elected to exercise his option to renew the lease was in effect left to agreement of the parties. The Massachusetts Supreme Court pointed out the rule that a construction rendering a contract valid and enforceable is to be preferred to one which makes it of no effect.

Young v. Nelson, supra, 121 Wash. 285, 286, 291, 209 P. 515, 517, 30 A. L. R. 568, 569, 572, concerned a lease with provision for renewal with such rental as " 'may then be agreed upon between the lessor and the lessee.' " The Washington Supreme Court said: "Manifestly, therefore, there should be some method whereby the lessee may enforce the contract for his benefit. If the lessor refuse to renew upon a reasonable rental, may he thereby prevent an agreement between himself and the lessee? The lessee might presume, when the contract was entered into, that the lessor would be reasonable and would fix a reasonable rental for the extended term and renew the contract as provided upon such reasonable rental. * * * She offered to pay such rental as the court might find to be reasonable, and the court assumed jurisdiction under its equity power, ascertained the reasonable rental that should be allowed, and inserted it in the contract for renewal. We believe that the court had such power * * *."

744

So in the case of Hall v. Weatherford, supra, 32 Ariz. 370, 380, 259 P. 282, 286, 56 A. L. R. 903, 910, the Arizona Supreme Court quoted with approval from Young v. Nelson, and followed the rule that when a lease gave the lessee an option to renew with rent to be determined by the agreement of the parties, the court would fix it, saying: "We hold that a renewal clause leaving the rent to be fixed by agreement implies a reasonable figure, and is enforceable, and therefore valid." We see no reason why the courts may not fix a "reasonable" amount of land, under the circumstances existing here, as well as they may determine a "reasonable" rental when that item of an extension agreement is left indefinite.

The lessee here is entitled to the benefit of his option agreement to the extent that he may claim such part of plaintiffs' "adjacent and contiguous" property as he may reasonably need; but this should be fixed by the court so that the lessee may have the benefit of his agreement as we think the parties intended to make it, and the remainder of plaintiffs' land may be freed from the unjust and unintended burden sought to be imposed.

VI. The plaintiffs contend that the enactment of a zoning ordinance by the City of Bettendorf, under which all of plaintiffs' property, including that now occupied by lessee, is placed in a residential district makes it impossible for the lessee to use any further land and so the performance of the option clause is void. The defendant says, in answer to this argument, that it is possible the ordinance may be changed before the expiration of the period granted by the option clause; and further, that he might wish to use the property for some purposes properly connected with an airport operation which are not in conflict with the ordinance as it stands. We think these are all matters which go to the reasonable needs of the defendant in operating his airport, as contemplated by the parties at the time of making the contract, which must be determined by the trial court upon a further hearing. We have recognized the possibility that zoning ordinances may be changed in the course of time. Hall v. West Des Moines, 245 Iowa 458, 467, 468, 62 N.W.2d 734, 739, 740. We cannot say that under all conditions the further extension of the airport or uses not in conflict with the zoning ordinance are impossible.

VII. The defendant urges that even though the agreement is couched in terms so indefinite and vague as to be incapable of construction, the practical interpretation put upon it by the parties by their subsequent conduct may remedy the defect. It is what is known as the rule of "practical interpretation." That this is well settled law there can be no doubt. Martin v. A. W. Moeller & Son, 241 Iowa 1033, 1034, 1035, 44 N.W. 2d 345, 346, and citations; Darnall v. Day, supra, 240 Iowa 665, 671, 37 N.W.2d 277, 280. So it is said that, as the parties here have recognized the right of the defendant to take additional ground, as shown by the leasing of the further tracts of .77 and 5.54 acres, they have made the possibly ambiguous meaning of "adjacent and contiguous" certain. This, however, is a two-edged weapon. The additional land leased is both adjacent and contiguous to the original leasehold. In a period of 13 years this has been all that the defendant has required. We think it throws considerable doubt on his claim that he reasonably needs the entire remaining 120 acres for his purposes, and so on his contention that all of plaintiffs' lands were contemplated by the parties as being within the understanding of the original agreement.

VIII. We conclude that the parties meant to give the defendant the right to take only such parts of plaintiffs' property not specifically described in the original lease, as might be reasonably needed by him in the construction and operation of his airport; and that they did not intend to give him a right for fifty years to encumber all of such property under the option clause. The record before us does not furnish sufficient facts from which we may make a determination as to how much this may be. The cause must be reversed and remanded for a finding and judgment on this point. The present lands leased and occupied by the defendant, totaling 33.82 acres, are of course subject to the lease; and those parts excluded by the decree and judgment of the trial court, consisting of the homesteads of the plaintiffs and the 20 acres south of Middle Road, are permanently free from any claim of the defendant. It will be the duty of the trial court to apply the rule of reasonableness to the remaining lands.—Reversed and remanded.

746

GARFIELD, C. J., and LARSON, OLIVER, PETERSON, SNELL and THORNTON, JJ., concur.

BLISS, J., not sitting.