MILAN W. FREESE, d/b/a MILAN W. FREESE, INC., appellee, v. TOWN OF ALBURNETT, IOWA, appellant.

No. 51193.

(Reported in 125 N.W.2d 790)

JANUARY 14, 1964.

Francis J. Pruss, of Cedar Rapids, for defendant-appellant.

David G. Bleakley and Harold D. Vietor, both of Cedar Rapids, for plaintiff-appellee.

LARSON, J.—Plaintiff-contractor brought this action to recover the sum of $500 against the defendant, Town of Alburnett, Iowa, under a well drilling contract. His claim is for extra work performed under authority of an "extra work" order issued to him by the Town, through its engineer, pursuant to terms of the contract.

The issues themselves are simple. They are: (1) Was the work for which plaintiff seeks recovery actually extra work or was it work required under the basic contract price? (2) Did the plaintiff establish that he was entitled to the sum of $500 for extra work? The trial court found that the contract was ambiguous, that the work in issue was extra work, that the claimed amount was established under the contract, and overruled defendant's motion to dismiss and rendered judgment in favor of plaintiff for $500 plus interest.

Pursuant to a written contract, Exhibit 1, dated September 30, 1960, plaintiff drilled a deep well for defendant. Upon the completion of the actual drilling he was directed by the defendant's engineer to test pump the well under provisions of section 5 of the contract entitled "Testing". During the course of this test the well caved, allowing clay to come into the well preventing further testing. Under an extra work order, the test pump was removed, the well reamed and cleaned, a 10-inch I. D. casing was installed, and the well was tested a second time, to the satisfaction of the engineer. Although the claim for extra compensation for the second testing operation was approved by the engineer, it was refused by defendant and this action followed. Plaintiff contends that under the terms of the original contract the basic price included but one testing, that the extra work order for the second testing was properly issued by the engineer and the compensation properly agreed upon under the general specifications and schedule of prices of the contract. Other relative facts will be referred to as needed.

I. In its first brief point appellant asserts that work required to be performed by a written contract must be paid for at the contract price, and additional compensation may not be recovered for work within the provisions of the contract. McCauley v. Des Moines, 83 Iowa 212, 48 N.W. 1028; Marsh & Co. v. Light & Power Co. of St. Ansgar, 196 Iowa 926, 195 N.W. 754; 17A C. J. S., Contracts, section 364, "Extra Work", page 368.

■ Appellee does not deny this proposition, but asserts the provisions of the contract relating to test pumping being ambiguous must be interpreted by the court. In Division I of his brief he asserts correctly that if a contract is not free from indefiniteness and ambiguity, it must be interpreted by the court, and in such cases the court must determine the intention of the parties at the time the contract was executed (Harvey Construction Co. v. Parmele, 253 Iowa 731, 113 N.W.2d 760); that ambiguity appears when a genuine doubt appears as to the meaning of a contract, and the instrument must be construed as an entirety, Pedersen v. Bring, 254 Iowa 288, 117 N.W.2d 509. With these rules in mind we examine the relevant provisions of the contract, Exhibit 1. Under the Schedule of Prices, P-2 2, appears the following: "7. * * * Furnish and install all equipment for test pumping. Lump sum $500.00." Appellant contends this language is free from indefiniteness and doubt and that it requires the appellee to test pump this well as many times as was necessary to satisfy the Town's engineer, for the sum of $500, in order to complete his basic contract. Appellee disagrees, contending this clause requires the expensive installation of test pumping equipment only once. Considering the evidence that this is a time-consuming and costly operation and that the contractor was required to follow implicitly the directions of the engineer, the trial court found considerable doubt as to the meaning of this contract provision. We must agree. It considered the second testing came within the contract's provision for extra work, which provided:

"Without invalidating the contract, the Town may, through the engineer, order extra work deemed necessary. Such extra work shall be executed under the conditions of the original con-

tract. Such extra work shall be done only on written order by the engineer. Said order shall be explicit and shall be dated and signed by the engineer. \* \* \* The Town's copy of said work order shall be receipted for by the contractor's representative. \* \* \*."

It appears from the record that this contract was prepared by Mr. Raymond Rystrom, the Town's engineer, that the test pump was obtained from a concern in Rockford, Illinois, which furnished two men to assist in its installation and removal, at a total cost to plaintiff of $650, that it took some 98 man-hours of labor for each installation and, in placing the lump sum figure of $500 in the original contract, the engineer considered that figure was for one test only.

It further appears the engineer knew the contractor had drilled through a clay deposit, and considered the danger of a cave-in. However, in an effort to save the expenses to the Town of some $480 in casing off that area, he took a calculated risk and ordered the test pumping operation prior to issuing an order to install casing as is provided for in the general contract. This provision of the contract stated: "Though not anticipated the following unit prices shall apply if ordered by the Engineer: Drill for and install 10″ I. D. casing; $12.00 per foot." The contract also provided: "No deviation from the plans and specifications will be permitted without the written consent of the Town Council or the Engineer."

In the light of these circumstances we are satisfied there was at least a fair doubt as to what the parties actually had in mind when they used the language expressed in Item 7 relating to test pumping.

■■■■ II. This being true, we apply the rule that from the situation of the parties, the objects they were trying to accomplish, and any other facts in evidence, the actual intention of the parties must be determined. Harvey Construction Co. v. Parmele, supra, 253 Iowa 731, 739, 113 N.W.2d 760, 765. Other general rules applicable in this situation too well known to require citations are, that an agreement will not be construed so as to give one party an unfair, oppressive or inequitable advantage over the other, that unless the terms of the contract

clearly require it an interpretation will not be given which places one party at the mercy of the other, that courts will endeavor to give the contract that interpretation most equitable to the parties, and that the contract will be construed most strictly against the one who drew it. Marty v. Champlin Refining Co., 240 Iowa 325, 335, 36 N.W.2d 360, 365; Harvey Construction Co. v. Parmele, supra.

 Applying these rules to the evidence presented, we think it was clear only one test pumping was contemplated or required under the original contract, and that it was to be done only when so ordered by the Town's engineer. When the engineer was satisfied that the well was ready for test pumping, as he apparently was when the well was first test pumped, the plaintiff was in no position to protest or refuse to do the job. That was not his right or duty under the contract.

Appellant's argument that appellee knew the casing had to be put in before the well would be satisfactory is immaterial, although it does not clearly appear appellee knew this prior to the cave-in, or that he knew it had to be done before testing. Anyway he could not override the engineer's orders nor refuse to test the well under penalty of a breach of the contract. It would be most unfair and inequitable to hold Item 7 required the contractor to perform this expensive task as often as required by the engineer and to bear all the losses of chances taken by the engineer in order to save possible expenses to the Town. Had the engineer ordered the casing inserted before the test, obviously only one test would have been required.

Appellant relies upon the case of McCauley v. Des Moines, 83 Iowa 212, 48 N.W. 1028, but we do not find it in point. There the contractor sought extra compensation because he ran into extra hard digging due to a rock deposit. The contract called for excavation for a sewer line, and provided for extra pay only in order to make the sewer both "unyielding and impervious". In other words, the contract clearly limited the extra work authority to that unforeseen condition. The same certain requirement of the contractor appears in Marsh & Co. v. Light & Power Co. of St. Ansgar, supra, 196 Iowa 926, 195 N.W. 754, where the contractor was to excavate to a rock base. The fact

that it required two feet more excavation than anticipated did not make the contract subject to an extra work order.

In the case at bar the only reason it became necessary to test pump a second time was that the engineer, with full knowledge of the risk, decided not to case off the clay section before making the test. That it proved to be a bad guess should not be a detriment to the contractor, but to the Town which stood to gain if the calculated risk had worked the other way. It cannot be questioned that the Town, through its engineer, knew extra work would be required should the test fail because the casing had not first been installed. Plaintiff was paid under the contract for extra work cleaning out the well, for putting in the casing, and for the time used in test pumping. We see no reason why he should be denied compensation for the extra work installing and removing the testing equipment the second time, especially since it was done under an "extra work" order issued by the Town's engineer as provided in the original agreement. We, therefore, conclude the second testing was extra work as contemplated in the principal contract.

■ III. Appellant's next contention that the extra work order fixing the compensation at $500 was issued without authority has no merit. It contends section 7, paragraph 31, "Extra Work", found in the general specifications, does not give to the Town's engineer the authority to determine the prices for "extra work", that that determination was a matter for the Town and the contractor to agree upon unless a schedule of prices therefor was contained in the principal contract.

Provision 31 relating to "Extra Work" provides: "* * * Payment for such extra work shall be made by one of the following methods: 1. By unit prices contained in the contractor's proposal and incorporated in the construction contract [applicable to the extra casing work]. 2. By an acceptable lump sum proposal from the contractor."

As previously pointed out, the engineer did issue the extra work order under specific authority provided in the contract. It is true there was some dispute as to the compensation at the time and the amount was left blank, but two or three days later the lump sum of $500 was inserted in the order at the suggestion of

the contractor. Thus plaintiff bases his cause of action on the basic contract, contending Extra Work Order No. 6 was issued pursuant to the provisions of paragraph 31. That the engineer was authorized to act for the Town cannot be doubted, and as the sum of $500 was the unit price agreed upon for test pumping under Item 7 of the original contract, its reasonableness as to amount seems evident. In respect to extra work under paragraph 31, the Town acts through the engineer. The general specifications also state that authorization for extra work must be made by "a written order addressed to the Contractor and signed by the Engineer or his duly authorized representative."

IV. Appellant's principal complaint in this regard, as we understand it, is that since no compensation was recited when the extra work order was first issued, its later addition was without consideration and was invalid. This contention also is without merit for two reasons. The extra work was done under the original contract at the express direction of the Town's engineer. Thus, when these services were rendered, payment to plaintiff was contemplated by the parties, and this alone was sufficient to support a subsequent promise as to the amount. Lanfier v. Lanfier, 227 Iowa 258, 265, 288 N.W. 104; Dullard v. Schafer, 251 Iowa 274, 283, 100 N.W.2d 422. Under such circumstances the law implies a promise to pay, and its determination within a reasonable time by the parties amounts to a valid promise to pay that sum for the service. 12 Am. Jur., Contracts, section 95, pages 588, 589.

Furthermore, the "extra work" order itself was an agreement contemplated under the provisions of the principal contract, and must be considered a part of that contract. The rule is well established that where a contract contemplates the subsequent execution of a subsidiary agreement, the promises in such agreement are supported by the consideration of the original contract. 12 Am. Jur., Contracts, section 93, page 587.

At the inception of the extra work order it is clear extra compensation was contemplated, and we are satisfied the engineer's approval of the sum of $500 therefor, as was suggested by the contractor, falls within the provisions of the principal con-

1272

tract as to the determination of such compensation and was binding upon the Town.

We conclude there was no error and that the court properly overruled defendant's motion to dismiss and rendered judgment for plaintiff in the amount stated.—Affirmed.

All JUSTICES concur.