Darrel E. GOERING and Virndene Goering, Appellees,

v.

Maxine I. JEFFERSON, Appellant.

No. 52887.

Supreme Court of Iowa.

June 11, 1968.

Abramson, Myers, Myers & Anderson, Des Moines, for appellant.

W. Lawrence Oliver, Des Moines, for appellees.

LeGRAND, Justice.

This is an action in equity by which plaintiffs seek to secure an accounting from defendant. On July 23, 1964, the parties entered into a written ten-year contract under the terms of which plaintiffs were to care for certain of defendant's cattle in return for 50 percent of the net profits of the venture. After approximately one year, the contract was cancelled by mutual agreement of the parties.

Defendant claims the operation resulted in a substantial loss. She also sets up several affirmative defenses and relies on alleged fatal procedural defects which are discussed later.

Although the defendant is Maxine I. Jefferson, all negotiations with plaintiffs were carried on by her husband, Donald L. Jefferson, who acted as her agent. References to statements or actions of defendant include those of Donald L. Jefferson as they are binding on defendant.

The contract provided plaintiffs should maintain, feed and look after the cattle in a first class manner; provide water and water facilities and salt at all times; maintain proper fencing; and furnish all necessary labor for their proper supervision and care. Plaintiffs also agreed to accept any additional cattle brought to the farm by defendant. The contract included this provision:

"It is definitely understood and agreed that the feed, et al, and services to be furnished by the first parties [plaintiffs] as provided in Paragraph 2 hereof shall constitute their contribution to said cattle venture and the sole and only compensation to which the first parties shall be entitled for such contribution as hereinabove provided is 50% of the net profits to be derived from said cattle operations * * *."

Another provision obligated plaintiffs to make monthly written reports to defendant concerning the operation within five days after the last of the month. In the event of sale of any of the cattle covered by the program the net profits were to be divided between the parties and an accounting made within 30 days of each sale. The contract required defendant to keep "adequate books and records of said cattle operations, which books and records shall show the cost of said cattle and all expenses in connection with the operation in order that the net profit derived therefrom may be ascertained and plaintiffs shall at all times have free access to such books and records."

Much of the present difficulty of the parties results from the fact that no one paid much heed to these provisions. Apparently no report was made by plaintiffs concerning the cattle at any time, nor did defendant keep adequate and complete records or, at least, they were not made available for plaintiffs' examination. At the end of the first year it was apparent the venture was a failure.

There is a dispute concerning whether the beginning date of the contract was July 23, 1964, or March 1, 1965. This arises because the parties entered into a supplemental agreement providing for payment by defendant to plaintiffs for taking care of the cattle from July 23, 1964, until March 1, 1965. This supplemental agreement was fully performed and is not involved in this action except as it bears upon the starting date of the accounting period. The trial court determined the effect of this supplemental agreement was to postpone the beginning date until March 1, 1965, but we must disagree. While that agreement modified the original contract as to compensation, we are unable to find any evidence that it was intended to postpone the effective date of the agreement.

Sixty-three cattle were originally involved in this venture. Later 11 additional cattle were brought into the operation. There were a number of sales out of the herd and a number of additions by birth of calves. Various expenses arose, some of which were covered by specific terms of the contract and some of which were unprovided for. Our task is simply to allocate these various matters where they properly belong and to strike a balance between the parties. There is little law involved. It is principally a matter of fact.

■ Our trial here is de novo and as provided by rule 344(f) 7, Rules of Civil Procedure, we give consideration to the findings of the trial court although we are not bound by them. Johnson Construction, Inc. v. Vaudt, Iowa, 158 N.W.2d 664, filed May 7, 1968.

The most important factual issue in dispute relates to the value of the 63 head of cattle at the time they were placed on plaintiffs' farm by defendant. According to the testimony of both plaintiffs, prior to the time the contract was entered into and again at the time it was signed, defendant told plaintiffs the value of such cattle would not exceed $15,000.00. Defendant denies this. Several weeks after the execution of the contract a written schedule, designated Exhibit "A", was attached to the contract with the knowledge and consent of plaintiffs. This should have been done when the contract was signed. It contained a description of the 63 head of cattle and attributed to them a total value of $28,675.00, almost twice as much as the alleged oral statement concerning their value. The testimony of Darrel E. Goering, one of the plaintiffs, shows he received this Schedule A several weeks after he signed the contract. He then saw that the value of the cattle was fixed at $28,675.00. He testified, "I told him it was an awful price. I don't actually recollect just all what I said to him. I had occasion from time to time * * * to examine the contract. I never did take it to an attorney to really have it examined."

Concerning this inventory value of $28,675.00, the plaintiff, Virndene Goering, testified as follows:

"Q. And did you or Mr. Goering say anything to Mr. Jefferson after you saw that figure? A. I believe Darrel said that was an awful price, told him that was an awful price on cattle after him telling us he wouldn't exceed $15,000.00.

Q. Did you say anything to him? A. No."

Later she again testified that she knew of the inventory value in the contract and said nothing to Mr. Jefferson about it.

The trial court found the inventory did not state the actual value of the cattle and fixed this value at $14,339.00, which was arrived at in the following manner. Short-

ly after March 1, 1965, seven bulls inventoried at a value of $2900.00 were sold at auction for 52 percent of their listed value. The trial court held this established the value of the whole herd at only 52 percent of that shown in the exhibit attached to the contract. It used such basis in determining plaintiffs were entitled to judgment for $7406.45. If the value of the cattle is properly fixed at $14,339.00, a substantial profit is shown; if such value is $28,675.00, as shown in the contract, a loss is inevitable. For all practical purposes the value of the cattle is determinative of this action.

■ We must disagree with the trial court. Under the circumstances here we find the parties agreed upon a starting value of $28,675.00, and this figure must be accepted in determining the results of the cattle operation. There was mutual assent, or, perhaps more properly put, there was manifestation of mutual assent, to this value based on the conduct of the parties. 1 Williston on Contracts, Third Ed., (Jaeger), section 2, page 6, section 22A, page 49; 17 Am.Jur.2d, Contracts, sections 18–21, pages 354–357; 17 C.J.S. Contracts § 32, page 640; Industrial Products Manufacturing Co. v. Jewett Lumber Co., 8 Cir., 185 F. 2d 866; Capital Ware Co. v. McGill-Warner-Farnham Co., 276 Minn. 108, 149 N.W. 2d 31, 35, where the court said, "There can be no distinction in the effect of a promise, whether it be expressed in writing, orally, in acts, or partly in one of these ways and partly in others. It is the objective thing, the manifestation of mutual assent, which is essential to the making of a contract."

Here it is without dispute that the parties conducted their operations for a full year on a starting inventory of $28,675.00. No objection was made to that figure. The acts and conduct of the parties during that time clearly and unequivocally show their mutual assent to this inventory value.

■ We are faced with still another difficulty if we are to accept the reduced inventory value as established by the trial

court. The conduct of the parties during the year's operation leaves no doubt that they themselves had interpreted this contract as providing for a value of $28,675.00. This practical construction as used by the parties themselves will ordinarily be adopted by the courts. Gilbrech v. Kloberdanz, 252 Iowa 509, 513, 107 N.W.2d 574, 576; Christensen v. Iowa State Highway Commission, 252 Iowa 1351, 1357, 110 N.W.2d 573; David A. Baxter & Sons v. Sofio, 182 Neb. 599, 156 N.W.2d 141, 143.

We find no support in the record for the trial court's finding concerning the value of the cattle. The isolated sale of seven bulls some seven months after the contract was entered into cannot be used to establish the value of all of the cattle listed in the contract. We agree with the trial court that the value appears to have been inflated, but we cannot make a new contract for the parties. It should be noted no alternative value was suggested by plaintiffs. Their only complaint is that the price fixed was too high. Fraud is not alleged; reformation is not sought. Nowhere is there any evidence from which we can establish, except by pure speculation, any value other than that in the contract.

At 17 Am.Jur.2d, Contracts, section 242, page 627, we find this statement, " * * * interpretation of a contract does not include its modification or the creation of a new or different one." In the same volume at page 628, the author says this, "Courts cannot make for the parties better or worse equitable agreements than they themselves have been satisfied to make * * * or by construction relieve one of the parties from terms which he voluntarily consented to * * *."

We have several times recognized this same limitation on our power to "do equity." Lamson v. Horton-Holden Hotel Co., 193 Iowa 355, 185 N.W. 472, 26 A.L.R. 465. We expressed it in Harvey Construction Co. v. Parmele, 253 Iowa 731, 739, 113 N.W.2d 760, 764 this way, "We are aware that the long arm of the law cannot in all cases

reach far enough to protect the unfortunate, the unwise, the improvident, the shortsighted or the unwary from the results of definite legal contracts into which they have entered to their detriment. A person of legal age and mental competency is as free to make bad bargains as good ones without interference from the courts. * * *"

When there is doubt or ambiguity in the language used, we will endeavor to interpret a contract in an equitable manner and in a way which will not give one party an unfair or unreasonable advantage over the other, Harvey Construction Co. v. Parmele, supra, but we can find no such doubt or ambiguity in the terms of the contract now under consideration and we must enforce it as the parties agreed upon its terms.

In the case before us defendant had 30 years experience in cattle raising. Plaintiffs, although veteran farmers, had little knowledge of contracts of the type in issue. Defendant appears to have driven a hard bargain. The result we reach is one for which we have little enthusiasm; but to reach any other we would be compelled to ignore established rules for the interpretation of contracts.

We conclude the cattle operation resulted in a loss and plaintiffs are not entitled to judgment. Once we fix the figure of $28,-675.00 as the starting inventory value, this result is inescapable. We have carefully gone over the accounts submitted and have given plaintiffs the benefit of every inference possible under the evidence. Even after disallowing every item disputed by plaintiffs, we arrive at a loss of more than $2000.00. We find plaintiffs are not entitled to judgment.

In view of what we have said it is not necessary for us to consider defendant's various claims based on res adjudicata, election of remedies, and plaintiffs' failure to state a cause of action in their petition.

This cause is reversed with instructions to enter judgment for defendant with costs assessed to plaintiffs.

Reversed.

All Justices concur.