**FEDERAL LAND BANK OF OMAHA, A Corporation, Appellee,**

v.

**Michael A. BOLLIN and Kathy L. Bollin, husband and wife, Appellants.**

No. 86–1384.

Supreme Court of Iowa.

June 17, 1987.

Steven P. Wandro, Des Moines, Christine M. Luzzie and John L. Brown, Iowa City, and Danny C. Wilmoth, Ottumwa, for appellants.

Gary L. Wiegel, Mount Pleasant, and Thomas P. Lehan, Omaha, Neb., for appellee.

LAVORATO, Justice.

Today, in *First National Bank v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 52 (Iowa 1987), we hold that an automatic stay under 11 U.S.C. section 362 triggered by the filing of a voluntary bankruptcy petition bars, under Iowa Code section 628.4 (1985), a debtor's right to redeem from a real estate foreclosure sale. At issue in the present appeal is whether the parties revived, by agreement, redemption rights waived by the filing of a bankruptcy petition. We hold that they did and reverse and remand with directions to the district court.

The present case arises from the foreclosure of a mortgage on a farm owned by the defendants-mortgagors, Michael A. Bollin and Kathy L. Bollin, husband and wife (Bollins). The plaintiff, Federal Land Bank of Omaha (bank), as mortgagee, secured a money judgment and decree of foreclosure on the Bollins' farm on July 23, 1985. Notice of the sheriff's sale, scheduled for October 8, 1985, was given. *See* Iowa Code §§ 654.5, 626.74.

Prior to the sale, however, the Bollins filed a petition in bankruptcy in the United States Bankruptcy Court for the Southern District of Iowa, Davenport Division (bankruptcy court). Filing the petition operated to stay the foreclosure sale. *See* 11 U.S.C. § 362 (1982).

·On January 14, 1986, the bankruptcy court lifted the stay via a stipulated order drafted by the bank's attorney and signed by both parties and the bankruptcy judge. The order lifted the stay to allow the bank "to proceed to sheriff's sale and to begin the running of the redemption period of the debtors."

The bank purchased the mortgaged property for $80,000 at a sheriff's sale held on March 18, 1986, and received a sheriff's certificate that recited "unless redemption is made within one year ... [the bank] will be entitled to a deed." *See* Iowa Code § 626.95.

The state district court appointed a receiver on April 2, 1986, to serve "during the pendency of the redemption period herein." *See* Iowa Code § 626.45. On May 2, 1986, the receiver notified the court it had leased the farm to a third party and requested the court to approve the lease. On May 7 the Bollins asked the court to set aside the farm lease, claiming they should have been given preference in leasing the premises under Iowa Code section 654.14 (preference shall be given to owner in actual possession).

The bank responded on May 12, 1986, with a motion for issuance of a sheriff's deed to the mortgaged property. The bank relied on Iowa Code section 628.4 to support its position that the Bollins waived their redemption rights because of the automatic stay resulting from the filing of their bankruptcy petition. Section 628.4 provides that "[a] party who has taken an appeal from the district court, or stayed execution on the judgment, is not entitled to redeem."

The Bollins presented three issues to the district court: (1) whether the automatic stay under 11 U.S.C. section 362 is a stay of execution on the judgment under the

provisions of section 628.4; (2) whether the state district court is bound by the bankruptcy court's order under the principles of res judicata; and (3) whether the stipulated bankruptcy order should be viewed as a binding agreement between the parties with regard to the redemption rights.

On September 2, 1986, the district court decided each issue in favor of the bank and ordered the sheriff to issue a sheriff's deed to the bank. This appeal followed.

On appeal, the Bollins raise the same three issues raised in the district court. In addition, the Bollins raise a constitutional challenge to section 628.4, claiming that the statute violates the supremacy clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2.

Our holding in *Matt Bauer Farms* is dispositive of the first issue. Because we decide the parties could and did bind themselves to revive the waived redemption rights by the stipulated bankruptcy order, we do not reach the res judicata and constitutional issues.

■ I. By filing a petition in the bankruptcy court, the Bollins triggered the automatic stay provisions of 11 U.S.C. section 362 and thereby waived their redemption rights. *See* Iowa Code § 628.4; *Matt Bauer Farms*, 408 N.W.2d at 52. Our task is to determine whether the parties (1) could revive redemption rights via the stipulated order and (2) intended that the Bollins should have those redemption rights.

The district court answered our first inquiry adversely to the Bollins and consequently did not reach the second:

Defendants finally argue that the stipulated order should be viewed as a binding

agreement between the parties with regard to the redemption rights. It is a universal rule of law that the parties cannot, by consent, give a court jurisdiction of a subject of which it would not otherwise have jurisdiction. The bankruptcy court lacked power under the bankruptcy act to revive redemption rights; and the parties, through their consent to the court's order, cannot provide any binding effect on themselves with regard to the order.

(Citation omitted.) The district court clearly based its determination on the premise that the bankruptcy court lacked subject matter jurisdiction to revive redemption rights. It is clear from the context of the court's ruling that it was relying on *Johnson v. First National Bank,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

In *Johnson,* the bankruptcy court ordered that the running of the statutory redemption period be stayed pursuant to 11 U.S.C. section 105(a)[1]. Implicated was a Minnesota statute which, similar to Iowa's redemption statute, provided for a one-year redemption period from the date of the foreclosure sale. A sale had occurred and three weeks of the one-year redemption period remained at the time the bankruptcy petition was filed under chapter 11 of the Bankruptcy Code. The court held that section 105(a) did not give the bankruptcy court authority to toll the redemption period absent fraud, mistake, accident, or erroneous conduct on the part of the foreclosing party. *Johnson,* 719 F.2d at 274.

In a similar vein, the court held that the automatic stay provisions of 11 U.S.C. section 362(a)[2] did not toll or extend the re-

---

**1.** Section 105(a) provides:
> The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

**2.** Section 362(a) provides in pertinent part:
> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other

proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, *or to* recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate;

demption period. *Johnson,* 719 F.2d at 277. The court, however, did recognize that 11 U.S.C. section 108(b)[3] provides for an automatic stay of the statutory period of redemption for a period of sixty days after the filing of the petition in bankruptcy, provided some time for redemption is left on the date of filing. *Johnson,* 719 F.2d at 278. Because the sixty-day period passed without redemption of the property, the court found that full title rested in the mortgagee. *Id.*

"[S]ubject matter jurisdiction ordinarily means the power to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the attention of the court." *Wederath v. Brant,* 287 N.W.2d 591, 594 (Iowa 1980). Setting aside for the moment the fact the Bollins waived their redemption rights when they filed a petition in bankruptcy, we note the bankruptcy court does have the power to extend the period of redemption in cases of fraud, mistake, accident, or erroneous conduct under 11 U.S.C. section 105(a). *Johnson,* 719 F.2d at 274. It also has statutory authority under 11 U.S.C. section 108(b) to extend the redemption period for a period of sixty days from the date of filing. *Id.* at 278. Thus, the bankruptcy court has general authority to hear and determine questions arising from foreclosure and redemption.

Moreover, in contrast to *Johnson,* the real estate, rather than just the right of redemption, was a part of the Bollins' bankruptcy estate, thereby subjecting it to the jurisdiction of the court. *See* 20 Am. Jur.2d *Courts* § 88, at 450 (1965) ("In other words, 'jurisdiction' has reference to the power of the court over the subject matter, over the res or property in contest, and to the authority of the court to render the judgment or decree it assumes to make.").

If we recognize that the bankruptcy court had jurisdiction over the real estate, it certainly follows that it had jurisdiction with respect to any agreement covering disposition of that real estate. We therefore conclude, contrary to the district court's ruling, that the bankruptcy court had subject matter jurisdiction to give court sanction, via the stipulated order, to the parties' agreement to revive the Bollins' redemption rights. Our conclusion, however, presupposes that the parties could, under Iowa law, revive the redemption rights and intended to do so, two matters we next address.

■ II. The Bollins argue the bank should be bound by the terms of the stipulated order allowing the redemption rights to run. The parties have not presented, nor have we found, any authority for the proposition that statutory rights once waived cannot be revived by agreement. *See Kilmer v. Gallaher,* 116 Iowa 666, 670, 88 N.W. 959, 961 (1902) (section 628.4 is founded on the doctrine of waiver). The language of section 628.4 furnishes no evidence that the legislature intended to prohibit such an agreement with respect to waived redemption rights. Nor do we discern any violation of public policy because of such an agreement. To the contrary, our case law recognizes that the right of redemption is favored by the law. *See Olson v. Sievert,* 238 Iowa 1316, 1321, 30 N.W.2d 157, 159 (1947); *Wakefield v. Rotherham,* 67 Iowa 444, 448, 25 N.W. 697, 698–99 (1885).

We recognized in *Farmers Trust & Savings Bank v. Manning,* 359 N.W.2d 461,

---

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

**3.** Section 108(b) provides in pertinent part:

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

464 (Iowa 1984), that one justification for section 628.4 is that it prevents "the unfair extension of the redemptive period by delaying tactics." We reaffirm this appraisal of the statute today in *Matt Bauer Farms*, 408 N.W.2d at 54. That justification is not frustrated where the parties by agreement effect a revival of redemption rights, especially when the mortgagee receives a valuable *quid pro quo:* relief from the bankruptcy stay. Refusing to recognize the validity of the agreement while at the same time allowing the mortgagee to reap the benefits from that agreement would constitute gross unfairness to the mortgagors. We conclude, for all of these reasons, that allowing a revival of the redemption rights under these circumstances would not upset the legislative "scheme which carefully balances the rights and obligations of all those involved when a real estate mortgage is foreclosed." *Manning*, 359 N.W.2d at 464.

■ III. Finally, we consider whether the parties intended the Bollins should have redemption rights by the stipulated order.

We view the stipulated order as a judgment by consent, which is, in substance, a contract of record made by the parties and approved by the court. *World Teacher Seminar, Inc., v. Iowa Dist. Court*, 406 N.W.2d 173, 176 (Iowa 1987). Because a judgment by consent is regarded as a contract, the contract rules of construction apply. 49 C.J.S. *Judgments* § 178, at 314 (1947).

A number of such rules are well-summarized in *Bruhl v. Thul:*

> Thus we are asked to interpret the contract which the parties made for themselves. The objective is to ascertain the meaning and intention of the parties as expressed in the language used. It is the court's duty to give effect to the language of the contract in accordance with its plain and ordinary meaning and not make a new contract for the parties by arbitrary judicial construction. The court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language. In interpreting a contract we

may resort to rules of construction only where the language of the instrument is of doubtful meaning.

257 Iowa 889, 892–93, 134 N.W.2d 571, 573–74 (1965) (citations omitted); *see* Iowa R.App.P. 14(f)(14). We consider ambiguity exists when, after application of certain rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one. *Small v. Ogden*, 259 Iowa 1126, 1130, 147 N.W.2d 18, 20 (1966). In addition, in arriving at the intent of the parties as expressed by their agreement, we consider the entire instrument and give effect, if possible, to all language used. *Id.*

Interpretation of a contract focuses on ascertaining the meaning of contractual words; construction centers on deciding their legal effect. *Fashion Fabrics v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978). We always review construction as a legal issue. We also review interpretation as a legal issue unless it depended at the trial level on extrinsic evidence. *Id.*

The district court did not consider extrinsic evidence because it did not decide the meaning of the stipulated order. Hence, its interpretation and construction are both reviewed here as matters of law.

With these principles in mind, we turn to the language of the stipulated order. Before the decretal part of the order, the bankruptcy court noted that

> this order has been submitted in *settlement* of the hearing on the Motion for Relief from Automatic Stay and Request for Adequate Protection filed on behalf of the Federal Land Bank of Omaha by Attorney Thomas H. Burke.

(Emphasis added.) The word "settlement" suggests that each party was to receive some valuable consideration in resolving their differences. *Black's Law Dictionary* 1231 (5th ed. 1979) defines settlement as "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other." It is clear from the decretal part of the order that both parties expected and

intended the bank would be able to proceed to foreclosure sale and at the same time the Bollins would have redemption rights:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED *that the Automatic Stay is hereby lifted so that Federal Land Bank may proceed to schedule a Sheriff's sale* in the state court foreclosure proceedings....
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Automatic Stay is lifted only so as to allow Federal Land Bank to proceed to Sheriff's sale and *to begin the running of the redemption period of the debtors herein.*

(Emphasis added.)

The decretal part of the order also provides for the appointment of a receiver upon the Bollins' failure to pay $10,000. There would be no reason to mention a receiver unless the bank and the Bollins understood and intended the Bollins were to have redemption rights. Appointment of a receiver presupposes that a debtor has redemption rights. *See, e.g.,* Iowa Code §§ 626.45, 654.14.

Finally, the subsequent actions of the bank and the Bollins support a reasonable inference both sides understood that the Bollins had redemption rights. *See Village Supply Co. v. Iowa Fund, Inc.,* 312 N.W.2d 551, 555 (Iowa 1981) (practical construction placed on an agreement by the parties will be given effect); *Harvey Constr. Co. v. Parmele,* 253 Iowa 731, 745, 113 N.W.2d 760, 768 (1962). After purchasing the real estate at the sheriff's sale, the bank received a sheriff's certificate pursuant to section 626.95, which, in the words of the statute, entitled the bank to a deed "unless redemption is made within one year." Subsequently, on the bank's motion the district court appointed a receiver to serve "during the pendency of the redemption period." It was only after the Bollins asked the district court to set aside a farm lease negotiated by the receiver with a third party that the bank moved,

pursuant to section 628.4, for issuance of a sheriff's deed, some four months after the entry of the stipulated order.[4]

The bank argues the stipulated order does not grant the Bollins redemption rights but only refers to the beginning of the running of the redemption period. We disagree with this narrow interpretation of the stipulated order, especially in view of our construction and interpretation of the order. In any event we resolve any doubt suggested by the bank's interpretation against the bank as drafter of the order. *See Village Supply Co.,* 312 N.W.2d at 555 (doubts concerning the meaning of an agreement are resolved against its drafter).

Adopting the bank's interpretation would violate a well-established rule of construction: in the construction of doubtful contracts, courts will endeavor to give them that interpretation most equitable to the parties, one which will not give one of them unfair or unreasonable advantage of the other. *Harvey Constr. Co.,* 253 Iowa at 742, 113 N.W.2d at 766 (quoting *White v. Miller,* 132 Iowa 144, 149, 109 N.W. 465, 467 (1906)). Both parties entered into the agreement understanding and believing the Bollins would enjoy their redemption rights, the essence of the agreement as far as the Bollins were concerned. The bank has realized all it bargained for in the agreement. Denying the Bollins the same opportunity would result in an unfair and unreasonable advantage to the bank.

The bank's argument, however, does raise peripherally a troublesome issue that should be addressed. When the stipulated order was entered, the Bollins had no redemption rights, having waived them by filing their petition in bankruptcy. The order does not speak in terms of reviving those rights. One apparent explanation for the absence of this language is that the parties assumed the redemption rights were still in existence. Such explanation is reasonable given the fact that we had not yet decided *Matt Bauer Farms.* Another explanation is that the bank was aware of the possible consequences of a bankruptcy fil-

---

**4.** Bollins claimed they should have been given preference in leasing the premises as owners in actual possession. *See* Iowa Code § 654.14. The district court never ruled on the Bollins'

application to set aside the farm lease. We express no opinion on the merits of that application.

ing on redemption rights but chose to ignore the provisions of section 628.4. This explanation is also reasonable in light of the bank's subsequent assertion of the provisions of section 628.4 four months after the stipulated order was entered and *after* the Bollins moved to set aside the receiver's lease. We can reasonably infer the bank's action was in retaliation of the Bollins' motion to set aside the lease.

In any event, the issue confronting us is whether the absence of language specifically reviving the Bollins' redemption rights prevents us from enforcing the real intention of the parties: allowing the Bollins the benefit of redemption. Because the case was tried in equity, we resort to several familiar and related maxims of equity to resolve the issue. Equity regards substance and intent, rather than form, to prevent injustice. *See Bump v. Stewart, Wimer & Bump, P.C.,* 336 N.W.2d 731, 736 (Iowa 1983); *Fischer v. Klink,* 234 Iowa 884, 893, 14 N.W.2d 695, 700 (1944); 27 Am.Jur.2d *Equity* § 127, at 655–56 (1966) ("It is said that equity looks to the substance and not the shadow, to the spirit and not the letter; it seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling."). In applying this maxim to written instruments, courts of equity will "seek to discover and carry into effect the real intention of the parties and to enforce it according to the sense in which it was understood as shown by the subsequent acts and conduct of the parties." 27 Am.Jur.2d *Equity* § 127, at 656 (1966). Equity regards as done that which, in fairness and good conscience, ought to be done. *Fischer,* 234 Iowa at 892–93, 14 N.W.2d at 700; *Lovell-Scholfield Lumber Co. v. Carter,* 198 Iowa 238, 249, 199 N.W. 405, 409 (1924); *Farmers Loan & Trust Co. v. Brown,* 182 Iowa 1044, 1052, 165 N.W. 70, 72 (1917); 27 Am.Jur.2d *Equity* § 126, at 653 (1966).

Equity imputes an intent to fulfill an obligation. *Fischer,* 234 Iowa at 892, 14 N.W.2d at 700; 27 Am.Jur.2d *Equity* § 128, at 657 (1966).

Although the parties did not expressly revive redemption rights, their real intention, as we have said, was that the Bollins should have the benefit of those rights. Applying the equity maxims previously discussed to the circumstances surrounding the stipulated order and the subsequent acts and conduct of the parties, we are convinced we should enforce that intention. Any other holding would defeat the very purpose of the stipulated order and would be unfair and inequitable; the Bollins would be prevented unjustly from exercising redemption rights while the bank, which received a benefit from the order, would profit unfairly from it.

After applying contract rules of construction and equity maxims, we hold that the stipulated order restored the Bollins with redemption rights that could be exercised pursuant to the terms of section 628.-3.[5] The district court erred in not enforcing the order.

We reverse and remand with directions to the district court to enter judgment (1) acknowledging redemption rights in the Bollins and (2) providing that the redemption period under section 628.3 commenced on the date of the sheriff's sale, March 18, 1986.

REVERSED AND REMANDED WITH DIRECTIONS.

All Justices concur except SCHULTZ and CARTER, JJ., who concur in the result.

---

**5.** The Bollins' counsel asserted in oral argument that we should extend the redemption period for an additional ten months. The Bollins' brief raised no such assertion. Thus, we hold that the Bollins have waived error on this issue. *See* Iowa R.App.P. 14(a)(3). Moreover, the record is devoid of any evidence that the Bollins tendered payment to the bank during the redemption period. Absent such evidence we are reluctant to judicially mandate an extension of the redemption period. *See Tharp v. Kerr,* 141 Iowa 26, 31, 119 N.W. 267, 269 (1909); *cf. Federal Land Bank v. Heeren,* 398 N.W.2d 839, 843 (Iowa 1987) (failure to grant leasing preference under § 654.14 did not trigger extension of redemption period under § 628.3).