**JOHNSON CONSTRUCTION, INC.,**
Appellee,

v.

**Albert W. VAUDT and Helen Marie Vaudt,**
Appellants.

No. 52847.

Supreme Court of Iowa.

May 7, 1968.

Swisher & Swisher, by Willard M. Freed, Iowa City, for appellants.

Cudahy & Wilcox, Jefferson, for appellee.

SNELL, Justice.

This is an action in equity to foreclose a mechanics lien. Plaintiff is a construction company seeking recovery for materials and labor furnished defendants.

Defendants are the owners of the real estate and the improvements erected thereon.

We have in this case the unhappy but not unusual result of a modest idea with no plans, specifications or written contract growing into a major improvement with the cost far exceeding the estimate.

Plaintiff seeks recovery on a quantum meruit basis.

Defendants contend the work and materials were to be furnished under an oral contract for not to exceed $3300.00. Defendants also claim an offset for defective materials and workmanship.

The trial court found for plaintiff except for an offset in the sum of $574.00. Defendants have appealed. There is no cross appeal.

I. In the spring of 1963 defendants requested plaintiff to look over their lakeshore lots on North Twin Lake relative to the construction of some improvements and to estimate the cost. Mr. Ritter, plaintiff's vice president in charge of construction, visited the premises once with Mr. Vaudt and discussed the contemplated construction. Pencil sketches were drawn. Later Mr. Ritter returned and discussed the construction with Mr. and Mrs. Vaudt.

Mr. Ritter admitted that at that time he estimated the cost at $3300. Plaintiff was authorized to proceed.

Defendants contend there was an agreement as to cost and that there was to be a foundation on which they expected to move a house they could buy for $700. They also claim sidewalks, boathouse, patio, sea wall and windows for the front of the basement were included.

Mr. Ritter denied that there was any firm agreement as to price and said many things including the sea wall, retaining walls, additional stairs, sidewalks, windows and patio were added after his original estimate.

Defendants admitted that there were some changes and additions.

The pencil sketch from which the parties started was apparently lost. It was never offered in evidence. There were no plans, specifications, blue prints or written contracts.

The trial court found that "plaintiff did perform labor and furnish services and materials on said premises * * * and * * * that there was an implied contract to pay the reasonable value of said services and materials and that there was no express contract to perform the labor, materials and services for an express sum."

We give weight to the findings of the trial court but are not bound by them. Rule 344(f)7, Rules of Civil Procedure.

The parties agree that the problem is factual. There is no dispute as to the law.

Here the terrain was admittedly difficult. What might be encountered when digging into the bank was unknown. There was a general idea as to what defendants wanted but the terms as to how much should be done by plaintiff were too uncertain to form the basis of a binding contract. There was no "meeting of the minds" or to borrow a phrase from modern writers no "manifestation of mutual assent."

II. It is not denied that if proper materials were furnished and good work performed the individual charges made were reasonable and proper. Witnesses so testified. Plaintiff's total bill was $6,872.11. Defendants paid $2,300 thereon.

Estimates and opinions as to what the whole job should have cost were made two to three years after completion.

A general contractor and competitor of plaintiff testified that from what he could see and was told and estimating that there was considerable sub-surface work involved the overall cost would be about $7,000.

Another contractor testified for defendants. We quote from the record:

"What I included in this estimate was what Mr. Vaudt told me as being done. I can't name off all the items, I don't suppose. There was concrete block, basement wall, some sidewalks and some steps, a boathouse, a partial sea wall or whatever you want to call it, and a patio. Everything that Jake told me to figure I itemized and done and made a wild guess on it as far as I could make an intelligent guess on something like that that is already done, and in my opinion $5200.00 should easily do the work that I have figured."

Such estimates based on what someone told the witness but cannot be seen and wild guesses made two or three years after completion of the work are not very helpful here.

III. As we noted in the beginning defendants' project ended in a major improvement. The house moved on was completely rebuilt by defendants. Plaintiff had nothing to do with that. Defendants now have a year around home and not just a summer vacation cottage. During the rebuilding changes and repairs were made on the work done by plaintiff. From the evidence it is impossible to determine just how much of the cost was due to plaintiff's poor workmanship.

An employee of defendants testified that he worked on the project approximately two years. The pictures received in evidence show an attractive end result. The testimony and the pictures also show some structural defects and failures that should not have happened. The walls leaked, the basement was flooded, doors stuck and cement work cracked and gave way.

The trial court allowed defendants an offset of $574.00 for resealing a wall and replacing floor tile. Plaintiff has not appealed from this allowance.

Defendants claim an additional item for outside sealing of foundation walls. This work has not been done and there is no showing that the walls still leak or that there is continuing trouble. Defendants replaced the basement windows. It is impossible to determine with any reasonable accuracy how much of this cost was due to poor workmanship and how much to changed plans by defendants.

There was evidence of other expenses for defects not mentioned by the trial court that our review shows should be allowed.

A panel door and a birch jamb were replaced at a cost of $30.40. A sidewalk collapsed and $25.97 was spent for sand for filling underneath. It was estimated that it would cost $45 to $50 for further repairs. These items totalling $103.37 should be allowed.

Included in plaintiff's bill are charges for labor from July 5 to July 10, 1963 in the sum of $177.35. Only a few items have adequate support. One was for labor by Warren Fischer. He identified his time card showing work on the Vaudt job on July 5. On the same date there was charged to plaintiff by a hardware store an aluminum threshold and a plastic anchor for the Vaudt job. Mr. Fischer testified: "I don't exactly remember, but it seem like I put that threshold down on July 5th." Some other items are in sharp dispute.

Each of the defendants testified that they were living on the premises for a week beginning July 4. It was their vacation period. Mr. Vaudt said the only work done by plaintiff was the removal of some framing early on July 5.

Mr. Vaudt referred to Mr. Malte Hanson as a "sort of" foreman without effective

authority. Mr. Hanson did not make out his own time card. During the period in question plaintiff's workmen were working on an adjoining project or projects. There was testimony to that effect and the time cards so indicate. Mr. Hanson testified:

"I do not know who took the forms off the sidewalk.

"On July 5th, it seems like we went back over there and got some forms and hauled over there, steel forms, when we built that sea wall for Braginton, and we went over to his house and picked up some steel forms over there."

Mr. Frank Schamel, an employee of defendants, testified:

"During the time I worked for Mr. and Mrs. Vaudt, I worked both in the plant and out on this Twin Lakes project. I first went out to Twin Lakes to work on the 5th of July, and I was present every work day at the lake from the 5th of July on through the month of July, and after and including the 5th of July I did not ever see any of the Johnson Construction Company employees work on the Jake and Helen Vaudt project. They were working on an adjoining project."

Although the time used by the workmen in doing the work that can be traced to July 5th seems high we think it is sufficiently identified to the extent of charges totalling $91.70. Othewise any presumption of accuracy of the account for the week of July 5th has been successfully refuted. The labor charge should be reduced $85.65.

The additional offsets we find should be allowed total $189.02. This increases the total offset to be allowed defendants to the sum of $763.02 and to that extent the trial court's judgment is modified.

All of the problems in this case are purely factual. The parties agree that there is no dispute as to applicable law. No useful purpose would be served by further discussion.

Costs of appeal are taxed one-fourth to plaintiff-appellee and three-fourths to defendants-appellants.

The case is modified and affirmed.

All Justices concur, except MASON and RAWLINGS, JJ., who concur in the result.